*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0386p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FREDERICK JELOVSEK (07-5443); S.L. THOMAS
FAMILY WINERY, INC. dba Thomas Family Winery;
MARTIN REDDISH (07-5524),

　　　　　　　　　　*Plaintiffs-Appellants,*

　　　*v.*

PHIL BREDESEN, in his official capacity as Governor
of the State of Tennessee; PAUL SUMMERS, in his
official capacity as Attorney General of the State of
Tennessee; SHARI ELKS, in her official capacity as
Executive Director, Tennessee Alcoholic Beverage
Commission,

　　　　　　　　　　*Defendants - Appellees,*

WINE AND SPIRITS WHOLESALERS OF TENNESSEE,
　　　　　*Intervening Defendant - Appellee.*

Nos. 07-5443/5524

>

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
Nos. 05-00181; 06-00149—Curtis L. Collier, Chief District Judge.

Argued: April 29, 2008

Decided and Filed: October 24, 2008

Before: NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Sandra B. Jelovsek, Johnson City, Tennessee, James A. Tanford, INDIANA UNIVERSITY SCHOOL OF LAW, Bloomington, Indiana, for Appellants. Lyndsay Fuller, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, Andrew L. Colocotronis, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, Knoxville, Tennessee, for Appellees. **ON BRIEF:** Sandra B. Jelovsek, Johnson City, Tennessee, James A. Tanford, INDIANA UNIVERSITY SCHOOL OF LAW, Bloomington, Indiana, for Appellants. Lyndsay Fuller, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, Andrew L. Colocotronis, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, Knoxville, Tennessee, J. Forrest Hinton, Jr., BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, Birmingham, Alabama, Michael A. Meyer, TENNESSEE ATTORNEY GENERAL & REPORTER, Nashville, Tennessee, Henry E. Hildebrand III, LASSITER TIDWELL DAVIS KELLER &

HOGAN PLLC, Nashville, Tennessee, for Appellees.  Carter G. Phillips, SIDLEY AUSTIN, Washington, D.C., for Amici Curiae.

_____

**OPINION**

_____

ALAN E. NORRIS, Circuit Judge.  These consolidated cases ask the question whether Tennessee laws governing the wine industry violate the dormant commerce clause of the Constitution. This is one of several lawsuits filed across the country after the Supreme Court invalidated wine-related laws in Michigan and New York which allowed only in-state wineries to sell and ship wine directly to consumers. *Granholm v. Heald*, 544 U.S. 460 (2005).

The plaintiffs-appellants include Tennessee residents Frederick Jelovsek and Martin Reddish, individual oenophiles who would like better access to wine produced outside of Tennessee, and a winery based in the state of Indiana, S.L. Thomas Family Winery, Inc., which would like to sell directly to Tennessee residents. Plaintiffs sued the Governor, Attorney General, and Executive Director of the Tennessee Alcoholic Beverage Commission, in their official capacities. In addition, the Wine and Spirits Wholesalers of Tennessee ("WSWT") successfully intervened as a defendant. For convenience sake, as the Court did in *Granholm*, the appellants will collectively be referred to as "the wineries," unless distinguishing them is appropriate, and the appellees will be referred to as "the state."

The district court granted defendants' Fed. R. Civ. P. 12(c) motion for judgment on the pleadings. *Jelovsek v. Bresden*, 482 F. Supp. 2d 1013, 1023 (E.D. Tenn. 2007).[1] The district court concluded that since both in- and out-of-state wineries are prohibited from selling and shipping wine directly to Tennessee consumers, this case is distinguishable from *Granholm*. The invalidated laws in *Granholm* denied only out-of-state wineries the ability to ship to consumers, a disparate treatment that the Supreme Court ruled unconstitutional.

We agree with the district court that the Tennessee shipping restrictions are distinguishable from those struck down in *Granholm* and affirm the district court's judgment as to the Tennessee ban on the direct shipment of alcohol to consumers, including wine. However, the wineries make a broader challenge to the Tennessee regulatory scheme for alcohol, specifically wine. As discussed below, we conclude that certain other challenged laws are discriminatory on their face, and thus vacate the district court judgment as to those laws, and remand for further proceedings.

**I.**

Tennessee employs what is commonly referred to as a three-tier system of alcohol regulation. The Tennessee Alcoholic Beverage Commission ("TABC") issues separate classes of licenses to manufacturers and distillers, wholesalers, and liquor retailers. Tenn. Code Ann. § 57-3-201. Unlicensed sales of alcohol are not permitted. *Id.* § 404(a). Manufacturers are limited to selling to wholesalers; wholesalers may sell to retailers, or in some cases other wholesalers; consumers are required to buy only from retailers. *Id.* § 404(b)-(d).

Statutes curtail the importation of alcoholic beverages, including wine, into the state, as well as the transportation of alcoholic beverages by individuals who are not licensees. These statutes seem to contradict each other, which creates a confusing web of seemingly applicable laws, and in

_____

[1] It appears the Tennessee governor's name is misspelled in the style of the case. It is Phil Bredesen, not "Bresden."

its briefing and argument to the court the state did little to unravel the mystery.[2] The district court found, and the state concedes, that a Tennessee resident may transport a greater quantity of wine purchased from a Tennessee winery as compared to wine purchased in another state.

Tennessee wineries are also subject to the three-tier system, and have their own class of license. *Id.* § 201(4). However, wineries are subject to further regulation, as well as being afforded some exceptions from the general liquor control statutes, through Tennessee's Grape and Wine Law. *Id.* § 207. The Grape and Wine Law, *inter alia*, restricts winery licenses to individuals who have been Tennessee residents for at least two years, or to corporations whose stock is wholly owned by Tennessee residents of at least two years; and permits Tennessee wineries which use a sufficient percentage of Tennessee-grown grapes in their wine production to serve complimentary samples to patrons, and to sell at retail directly to customers without any additional license. *Id.* § 207(d), (f). The Grape and Wine Law also provides that, notwithstanding the transportation restrictions in other statutes, wine purchased at a Tennessee winery may be transported within the state of Tennessee. *Id.* § 207(i).

## II.

"We review a district court's grant of a motion for judgment on the pleadings de novo." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389 (6th Cir. 2007) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)). "The manner of review under [Fed. R. Civ. P.] 12(c) is the same as a review under Rule 12(b)(6); we must 'construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.'" *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006) (quoting *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)).

Plantiffs allege that the challenged statutes impermissibly discriminate against out-of-state wineries, and favor in-state wineries, in violation of the Commerce Clause. The scope of the Commerce Clause, which grants the exclusive power to Congress to regulate interstate commerce, recently has been summarized by the Supreme Court:

> The Commerce Clause empowers Congress "[t]o regulate Commerce . . . among the several States," Art. I, § 8, cl. 3, and although its terms do not expressly restrain "the several States" in any way, we have sensed a negative implication in the provision since the early days, *see, e.g.*, *Cooley v. Board of Wardens of Port of Philadelphia ex rel. Soc. for Relief of Distressed Pilots*, 53 U.S. 299, 12 How. 299, 318-319, 13 L. Ed. 996 (1852); *cf. Gibbons v. Ogden*, 22 U.S. 1, 9 Wheat. 1, 209, 6 L. Ed. 23 (1824) (Marshall, C. J.) (dictum). The modern law of what has come to be called the dormant Commerce Clause is driven by concern about "economic protectionism – that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-274, 108 S. Ct. 1803, 100 L. Ed. 2d 302 (1988). The point is to "effectuat[e] the Framers' purpose to 'prevent a State from retreating into [the] economic isolation,'" *Fulton Corp. v. Faulkner*, 516 U.S. 325, 330, 116 S. Ct. 848,

---

[2] Tenn. Code Ann. § 57-3-401(a) prohibits the transportation or possession of more than three gallons of untaxed alcoholic beverage. Subsection (b) prohibits the importation, shipment, or delivery of untaxed alcoholic beverages in excess of one gallon. Elsewhere, there appears to be a flat ban on the importation or transportation of alcoholic beverages, unless destined for a Tennessee license holder. *See* Tenn. Code Ann. § 57-3-402(b) ("No common carrier or other person shall bring or carry into this state for delivery or use in this state any alcoholic beverages unless the same shall be consigned to a manufacturer or wholesaler duly licensed . . . ."); *id.* § 402(c) ("It is unlawful for any person, railroad company or other common carrier, to transport or accept delivery of alcoholic beverages, consigned to any person except those duly authorized and holding a wholesaler's license.").

133 L. Ed. 2d 796 (1996) (quoting *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 180, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995); brackets omitted), "that had plagued relations among the Colonies and later among the States under the Articles of Confederation," *Hughes v. Oklahoma*, 441 U.S. 322, 325-326, 99 S. Ct. 1727, 60 L. Ed. 2d 250 (1979).

. . . .

Under the resulting protocol for dormant Commerce Clause analysis, we ask whether a challenged law discriminates against interstate commerce. *See Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 U.S. 93, 99, 114 S. Ct. 1345, 128 L. Ed. 2d 13 (1994). A discriminatory law is "virtually per se invalid," *ibid.*; *see also Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S. Ct. 2531, 57 L. Ed. 2d 475 (1978), and will survive only if it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives," *Oregon Waste Systems*, *supra*, at 101, 114 S. Ct. 1345, 128 L. Ed. 2d 13 (internal quotation marks omitted); *see also Maine v. Taylor*, 477 U.S. 131, 138, 106 S. Ct. 2440, 91 L. Ed. 2d 110 (1986).

*Dep't of Revenue v. Davis*, 128 S. Ct. 1801, 1808 (2008).

Applying this constitutional principle to the regulation of alcohol at times has been problematic for courts, due in part to the existence of the Twenty-first Amendment to the Constitution, which repealed prohibition and grants broad authority to the states to regulate alcohol importation and distribution. There was a period following ratification of the Twenty-first Amendment when the states' power to regulate alcohol was thought to be virtually limitless.[3] However, more recent case law has concluded that "[t]he aim of the Twenty-first Amendment was to allow States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use. The Amendment did not give States the authority to pass nonuniform laws in order to discriminate against out-of-state goods, a privilege they had not enjoyed at any earlier time." *Granholm*, 544 U.S. at 484-85. Similarly, "the Twenty-first Amendment . . . does not displace the rule that States may not give a discriminatory preference to their own producers." *Id.* at 486; *accord Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 275-76 (1984). A statute may be shown to violate the Commerce Clause based either upon its discriminatory purpose, or discriminatory effect. *Bacchus*, 468 U.S. at 270.

## A. Direct Shipping and Tennessee's Three-Tier System

The Federal Trade Commission ("FTC") recently drafted a report strongly in favor of permitting online wine sales, and direct shipping from wineries to consumers. Federal Trade Commission, *Possible Anticompetitive Barriers to E-Commerce* (2003), *available at* http://www.ftc.gov/os/2003/07/winereport2.pdf. In it, the FTC extolls the many benefits to consumers by allowing internet sales and direct shipping, including a much greater variety of wines available, and lower prices. *Id.* at 18-19. It also goes on to address the most common concerns with such programs, preventing underage drinking and collecting state tax revenue. *Id.* at 26-39.

---

[3] The Twenty-first Amendment states: "The transportation or importation into any State . . . of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2. For a thorough discussion of the history and evolution of jurisprudence as it relates to the tension between the dormant Commerce Clause and the Twenty-first Amendment, see *Granholm*, 544 U.S. at 476-87. *See also* Thomas E. Rutledge & Micah C. Daniels, *Who's Selling the Next Round: Wines, State Lines, the Twenty-first Amendment and the Commerce Clause*, 33 N. Ky. L. Rev 1, 8-22 (2006).

Despite the FTC conclusion that states should allow the direct shipping of wine, Tennessee's refusal to do so presents no constitutional problem. The Commerce Clause does not require that states *optimize* commerce, only that "[i]f a State chooses to allow direct shipment of wine, it must do so on evenhanded terms." *Granholm*, 544 U.S. at 493. As the district court noted, "[t]he logical corollary to evenhanded permissiveness is evenhanded restrictiveness – a State may choose to ban direct shipment of wine." *Jelovsek*, 482 F. Supp. 2d at 1019. We agree and affirm the judgment of the district court with respect to upholding Tennessee's ban on direct shipment of alcoholic beverages, including wine, to consumers, as it applied equally to in-state and out-of-state wineries.

Likewise, Tennessee's decision to adhere to a three-tier distribution system is immune from direct challenge on Commerce Clause grounds. *See Granholm*, 544 U.S. at 489 ("States may . . . funnel sales through the three-tier system. We have previously recognized that the three-tier system itself is 'unquestionably legitimate.'") (quoting *North Dakota v. United States*, 495 U.S. 423, 432 (1990)).

## B. Grape and Wine Law

Turning to Tennessee's Grape and Wine Law, appellants assert that the state has already decided to eschew the three-tier system through the multitude of exceptions offered to Tennessee wineries as part of the Grape and Wine law, exceptions which impermissibly favor in-state economic interests.

The district court reasoned that purchasing wine at a winery in person "is different . . . from the convenience-oriented market that would be created and facilitated by a law allowing direct shipping." *Jelovsek*, 482 F. Supp. 2d at 1021. The court went on to rule that "[p]laintiffs have failed to demonstrate that the Grape and Wine Law discriminates against interstate commerce by practical effect," *id.*, and noted that the distinctions that *are* present "would have a *de minimis* impact on interstate commerce." *Id.* at 1021 n.8.

We discern two problems with the court's analysis. The first is that there is no *de minimis* exception when evaluating whether a law is discriminatory on its face. "Where [a] statute *regulates even-handedly* to effectuate a *legitimate local public interest*, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (citing *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 443 (1960)) (emphasis added). However, only when a statute passes this initial scrutiny is a state afforded "a more flexible approach permitting inquiry into the balance between local benefits and the burden on interstate commerce." *Bacchus*, 468 U.S. at 270 (citing *Pike*, 397 U.S. at 142). It is not appropriate to conclude that a statute regulates evenhandedly because its clear facial discrimination has only a *de minimis* effect on interstate commerce.

Second, while the district court focused on whether the Grape and Wine Law has the practical *effect* of discriminating in favor of in-state interests, it appears that the very *purpose* behind the Grape and Wine Law was to discriminate in favor of in-state wineries, especially those that use grapes grown in-state. "A finding that state legislation constitutes 'economic protectionism' may be made on the basis of . . . discriminatory purpose . . . ." *Id.* (citing *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 352-53 (1977)).

The parties, as well as the district court, spent a great deal of effort examining whether, and to what extent, *Granholm* applies to the cases before us. We believe *Bacchus* is also instructive in this case. In *Bacchus*, the state adopted a law favoring fruit wine produced from products grown in the state. *Bacchus*, 468 U.S. at 265. The legislature's stated purpose when enacting the law "was to encourage and promote the establishment of a new industry" and that granting benefits to "fruit wine

manufactured in the State from products grown in the State was intended to help in stimulating the local fruit wine industry." *Id.* at 270-71 (citation omitted). Thus, the Court concluded that it "need not guess at the legislature's motivation, for it is undisputed that the purpose . . . was to aid [in-state] industry. Likewise, the effect . . . is clearly discriminatory, in that it applies only to locally produced beverages . . . ." *Id.* at 271. The Court rejected the reasoning of the state supreme court that the low sales volume of the benefitted local wine meant those "products pose[d] no competitive threat to other liquors produced elsewhere and consumed in [state]." *Id.* at 269 (citation omitted).

Nor do we need to guess the legislature's purpose here. Included in the statement of purpose for Tennessee's Grape and Wine Law is the following:

> WHEREAS, It is recognized that development of an additional cash crop would *benefit the rural areas and the general economy of the State of Tennessee*; and
>
> WHEREAS, It appears that many areas of Tennessee are especially suitable for growing grapes but are unsuitable or less suitable for growing any other cash crops; and
>
> WHEREAS, Under existing law no persons have ever been licensed to operate a winery and stimulate grape growing in Tennessee by *providing an initial and minimum market for native grapes*;

1977 Tenn. Pub. Acts 255 (emphasis added).

This stated purpose is difficult to distinguish from the stated purpose of the law struck down in *Bacchus*. *Compare Bacchus*, 468 U.S. at 270 (stating the explicit purpose was to to benefit in-state industry). Another telling comparison between Tennessee's Grape and Wine Law and the tax exemption for locally-produced alcohol law struck down in *Bacchus* is the following provision of the law:

> Wine produced in Tennessee from agricultural products produced in Tennessee shall be taxed at the same rate as wine produced out-of-state. It is hereby provided, however, that *should the United States Constitution*, as authoritatively interpreted by the final decision of a federal or Tennessee court, *permit a lesser tax to be imposed on wine produced in Tennessee from agricultural products produced in Tennessee than on wine produced out-of-state*, then there shall be levied a tax of five cents (5 cent(s)) per gallon on wine produced in Tennessee from agricultural products produced in Tennessee. Such *wine from Tennessee products shall then be exempt from all other alcoholic beverage taxes and fees*.

Tenn. Code Ann. § 57-3-207(l) (emphasis added). The constitutional caveat was added later; the original Act exempted in-state wine from all taxes save for the five-cent per-gallon tax. 1977 Tenn. Pub. Acts 256. We do not cite this particular provision as especially egregious in its current form, but rather as an illustration of the discriminatory intent behind passage of Tennessee's Grape and Wine Law and its similarity to the statute struck down in *Bacchus*. *Compare id. with Bacchus*, 408 U.S. at 265 (stating that the Hawaii statute at issue exempted locally produced fruit wine from the otherwise mandatory 20% excise tax).

Other provisions of the Grape and Wine Law are discriminatory on their face, and in their purpose. For example, the Grape and Wine Law requires a two-year Tennessee residency before a winery license may be obtained and, if the applicant is a corporation, all of the capital stock must be owned by two-year Tennessee residents. Tenn. Code Ann. § 57-3-207(d). Only if 75% of the agricultural products used in producing its wine are grown in Tennessee may a Tennessee winery serve samples of the wine without charge at its facility, and sell wine at retail directly to consumers.

*Id.* § 207(f). In addition, "any nonprofit association organized to encourage and support grape growing and winemaking in [Tennessee] with ten (10) or more Tennessee licensed wineries as members" is permitted to hold festivals and "transport, serve and offer complimentary samples" of Tennessee wine, *id.* § 207(o), and wineries using at least 75% agricultural products from Tennessee may "donate wine without charge to nonprofit religious, educational or charitable institutions or associations." *Id.* § 207(f)(5). Each of these provisions impermissibly favor Tennessee interests at the expense of interstate commerce.

The Thomas plaintiff in particular also complains that, under the Grape and Wine Law, consumers may lawfully transport "any amount [of wine] which the customer may legally purchase from a Tennessee licensed winery," *id.* § 207(i), while a consumer purchasing wine in person from an out-of-state winery appears to be prohibited from transporting the wine to his home in Tennessee. *Id.* § 402(a).

Finding that a law "directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [the Supreme Court] has generally struck down the statute without further inquiry." *Granholm*, 544 U.S. at 487 (quoting *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986)). Even so, as the *Granholm* Court did, a court must still "consider whether [the] state's regime 'advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" *Id.* at 489 (quoting *New Energy Co. v. Limbach*, 486 U.S. 269, 278 (1988)).

In *Granholm*, the states advanced two obvious arguments—that the restriction on shipping helped keep alcoholic beverages out of the hands of minors and facilitated tax collection. *Id.* Both justifications were rejected, as the Court found nondiscriminatory alternatives existed to serve the states' proffered concerns. *Id.* at 490-93. The state in this cases has yet to offer justification for the challenged laws, but rather has steadfastly maintained that they are not discriminatory.

### III.

Our conclusion that the Grape and Wine Law is facially discriminatory does not end the inquiry. We must decide what is to be done about it. The Grape and Wine Law does not act to directly burden out-of-state wineries, but rather to favor in-state wineries. Thus, striking the law as written or surgically excising offending provisions would, while remedying the constitutional infirmities, serve to hurt in-state Tennessee wineries, none of which are parties to this action. And, it would not benefit out-of-state wineries or any plaintiff in this case. The state defendant does not express an opinion as to an appropriate remedy, while the intervening defendant WSWT argues in the alternative that if the scheme is found to be discriminatory, the appropriate remedy would be to strip the law's benefits from in-state wineries rather than extending direct-sale benefits to out-of-state wineries.

In support of their argument, WSWT cites *Beskind v. Easley*, 325 F.3d 506, 519 (4th Cir. 2003), for the proposition that "[the state] would wish us to take the course that least destroys the regulatory scheme that it has put into place pursuant to its powers under the Twenty-first Amendment." In *Beskind* the district court "declar[ed] unconstitutional the core statutes that prohibit such direct shipment and enjoin[ed] their enforcement." *Id.* at 517. The court of appeals upheld the district court's judgment that the law was unconstitutional, but reversed the remedy, noting that "it causes less disruption to [the state's alcoholic beverage] laws to strike the single provision . . . creating the local preference." *Id.* at 519.

The Fifth Circuit reached a different result. It noted that the "Supreme Court has held that 'when the right invoked is that of equal treatment, the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by *withdrawal of benefits* from the favored class as well

as by *extension of benefits* to the excluded class.'" *Dickerson v. Bailey*, 336 F.3d 388, 407 (5th Cir. 2003) (quoting *Heckler v. Mathews*, 465 U.S. 728, 740 (1984)) (emphasis in original). The Fifth Circuit found the Supreme Court's remedy in *Bacchus* to be analogous, striking down the discriminatory tax on out-of-state entities rather than extending the excise tax to in-state entities. *Id.* at 408. The court concluded that "it is not the function of litigants seeking redress for violations of their constitutional rights under the Commerce Clause to seek the imposition of affirmative burdens on other parties competing in the marketplace. The constitutional right the Plaintiffs here seek to protect is their right to participate in interstate commerce that is unimpeded by protectionist state policies." *Id.* at 408.

Both decisions are well reasoned, but neither is perfectly analogous to the cases before us. The district court acknowledged that "the record in this case is not as detailed as it could be." *Jelovsek*, 482 F. Supp. 2d at 1015. The court also found "the State's response to be particularly inadequate in addressing the more substantive issues as it . . . failed to provide a justification for Tennessee's alcoholic beverage restrictions." *Id.* at 1016 n.3. As a result, we conclude the best course of action is to remand the case to the district court for further consideration consistent with this opinion. The state should be afforded the opportunity to justify the facially discriminatory Grape and Wine Law as serving a legitimate local purpose and establish that no non-discriminatory alternatives exist. If the state is unable to do so, the court should devise a remedy that treats in-state and out-of-state wineries equally. In addition, because striking down the Grape and Wine Law would affect in-state wineries, it may be that they will wish to seek intervention on remand.

## IV.

We **affirm** the district court's judgment upholding the Tennessee law banning the direct shipment of alcoholic beverages to consumers, including wine. However, we conclude that Tennessee's Grape and Wine Law is discriminatory on its face. We therefore **vacate** the district court judgment to the contrary, and **remand** for further proceedings consistent with this opinion.