RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0458p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CHERRY HILL VINEYARDS, LLC; WILLIAM G.
SCHNEIDER, JR.; JOHN D. REILLY, JR.,
              *Plaintiffs-Appellees,*

              *v.*

CHRISTOPHER L. LILLY, in his official
capacity as Executive Director of the
Kentucky Office of Alcoholic Beverage
Control,
                        *Defendant,*

WINE AND SPIRITS WHOLESALERS OF
KENTUCKY, INC.,
              *Intervening Defendant-Appellant.*

No. 07-5128

_____

Appeal from the United States District Court

for the Western District of Kentucky at Louisville.

No. 05-00289—Charles R. Simpson, District Judge.

Argued: September 18, 2008

Decided and Filed: December 24, 2008

Before: CLAY and GRIFFIN, Circuit Judges; STAFFORD, Senior District Judge.[*]

_____

## COUNSEL

**ARGUED:** Kenneth S. Handmaker, MIDDLETON & REUTLINGER, Louisville, Kentucky, for Appellant. James Alexander Tanford, INDIANA UNIVERSITY SCHOOL OF LAW, Bloomington, Indiana, for Appellees. **ON BRIEF:** Kenneth S.

_____

[*] The Honorable William H. Stafford, Senior United States District Judge for the Northern District of Florida, sitting by designation.

Handmaker, Kevin L. Chlarson, MIDDLETON & REUTLINGER, Louisville, Kentucky,
Daniel R. Meyer, Louisville, Kentucky, for Appellant.   James Alexander Tanford,
INDIANA UNIVERSITY SCHOOL OF LAW, Bloomington, Indiana, for Appellees.
Carter G. Phillips, SIDLEY AUSTIN LLP, Washington, D.C., Robert S. Jones, OFFICE
OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Amici Curiae.

–––––––––––––––––

**OPINION**

–––––––––––––––––

CLAY, Circuit Judge.   Intervenor Wine and Spirits Wholesalers of Kentucky,
Inc., appeals the district court's grant of partial summary judgment to Plaintiffs Cherry
Hill Vineyards, LLC, William G. Schneider, Jr., and John D. Reilly, Jr.  Plaintiffs filed
suit pursuant to 42 U.S.C. § 1983, successfully challenging the constitutionality of
certain provisions of Kentucky's laws regulating small farm wineries.  The district court
ruled, pursuant to the Supreme Court's decision in *Granholm v. Heald*, 544 U.S. 460
(2005), that the in-person purchase requirement in portions of Kentucky's statutory
scheme discriminated against interstate commerce by limiting the ability of out-of-state
small farm wineries to sell and ship wine to Kentucky consumers.  For the reasons that
follow, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

I.      **Procedural History**

In deciding *Granholm*, the Supreme Court held that state laws permitting in-state
wineries to directly ship their products to customers and restricting out-of-state wineries'
ability to do so violate the dormant Commerce Clause.  On May 16, 2005, the same day
that *Granholm* was decided, Huber Winery, Schneider, and Reilly ("Plaintiffs") filed a
complaint in United States District Court for the Western District of Kentucky against
Defendant Lajuana S. Wilcher, in her official capacity as Secretary of the Kentucky

Environmental and Public Protection Cabinet, and Lavoyed Hudgins,[1] in his official capacity as Executive Director of the Kentucky Department of Alcoholic Beverage Control ("Defendants").

Plaintiffs filed a claim pursuant to 42 U.S.C. § 1983, alleging that Kentucky statutes violated the Commerce Clause by discriminating against out-of-state wineries with respect to wine sales to customers and to licensed retailers. Plaintiffs' complaint explained that Huber Winery owns and operates a winery located in Starlight, Indiana and would sell and deliver wine directly to Kentucky residents but for Kentucky's restrictions on the direct shipping of wine by out-of-state wineries. Plaintiffs Schneider and Reilly, residents of Kentucky, are regular wine purchasers who would have out-of-state wine shipped directly to them if not for Kentucky's direct shipping restrictions.

On July 7, 2005, Wine and Spirits Wholesalers of Kentucky Inc ("the Wholesalers"), a non-profit corporation whose members are licensed Kentucky wholesalers, filed a motion to intervene which was granted by the district court. After Plaintiffs filed a motion for judgment on the pleadings, the case was held in abeyance in anticipation of pending legislation. Plaintiffs amended their complaint on February 7, 2006, adding Cherry Hill Vineyards, LLC, an Oregon winery, as a plaintiff.[2]

In April 2006, the Kentucky legislature responded to *Granholm* by enacting Senate Bill 82 ("SB 82"), 2006 Ky. Act, Ch. 179, revising its regulation of wine. On May 18, 2006, Plaintiffs filed a second amended complaint, addressing the amended statutory language contained in SB 82. Because the bill would not come into effect until January 1, 2007, the district court ruled on Plaintiffs' July 21, 2005 motion for judgment on the pleadings on August 22, 2006, holding portions of the Kentucky statutory scheme

---

[1]Lavoyed Hudgins has been replaced in this appeal by Christopher L. Lilly, the current executive director of the Kentucky Office of Alcoholic Beverage Control.

[2]The parties later stipulated to the dismissal of Huber Winery as a plaintiff and Lajuana S. Wilcher as a defendant.

unconstitutional.[3] Defendants and the Wholesalers appealed the district court's order to this Court, but on January 1, 2007 when SB 82 came into effect, the appeals became moot and were dismissed.

On May 18, 2006, Plaintiffs filed a second amended complaint for declaratory relief pursuant to 42 U.S.C. § 1983. Plaintiffs claimed that Kentucky's statutory scheme violated the Commerce Clause by discriminating against out-of-state wineries with respect to sales to consumers and to licensed retail wine sellers, and requested a judgment "declaring Kentucky's statutory scheme that restricts the ability of out-of-state wineries to sell and ship wine directly to consumers and retail license holders within the Commonwealth of Kentucky unconstitutional." In their second amended complaint, Plaintiffs also requested a permanent injunction prohibiting from enforcing provisions of KRS §§ 244.165, 243.020, 243.032, 243.100(f), 243.200, and 243.155 "that prohibit out-of-state wineries from selling and shipping wine directly to consumers and retail package and retail drink license holders in Kentucky and requiring them to permit such direct sales and shipment."

The parties then filed cross-motions for summary judgment, which were granted in part and denied in part on December 26, 2006. The district court upheld the constitutionality of the challenged sections of the revised statutes, but declared the in-person purchase requirement of KRS §§ 243.155 and 244.165 unconstitutional "as it discriminates in practical effect against out-of-state small farm wineries, and has not been shown to advance the legitimate local purposes asserted that cannot be adequately served by reasonable nondiscriminatory alternatives." *Cherry Hill Vineyards v. Hudgins*, 488 F. Supp. 2d 601, 625 (W.D. Ky. 2006). Pursuant to this holding, the district court ordered the in-person requirement stricken from both statutes and enjoined Defendants from enforcing the requirement. Defendants did not appeal the district court's judgment.

---

[3]The district court's August 22, 2006 order held unconstitutional portions of KRS §§ 241.010(22), 241.010(45) and 243.156(c) and the entirety of KRS §§ 243.155(1)(f)(1), 243.155(2), 243.156(h)(1) and 243.156(3) and enjoined Defendants from enforcing these provisions.

On January 19, 2007, the intervening Wholesalers filed a timely notice of appeal. Plaintiffs subsequently filed a motion to dismiss, claiming that the Wholesalers lacked standing to appeal because Defendants abandoned the suit. This motion has not been ruled on and has been sent to a merits panel for disposition.

## II.     Statutory Framework

As part of its overall regulation of alcohol manufacturing and distribution, Kentucky regulates the sale of wine from "small farm wineries," which are defined as wineries producing no more than 50,000 gallons of wine per year. KRS § 241.010(46). Any in-state or out-of-state small farm winery may apply for a small farm winery license. KRS § 243.155(1). This license allows a winery to ship its wine to a Kentucky customer if: "1.) The wine is purchased by the customer in person at the small farm winery; 2.) The wine is shipped by licensed common carrier; and 3.) The amount of wine shipped is limited to two (2) cases per customer per visit." KRS § 243.155(2)(g); KRS § 244.165(2) (explicitly listing the same conditions on shipping to Kentucky customers for out-of-state small farm wineries). If an out-of-state small farm winery ships wine directly to Kentucky customers in violation of these conditions, the winery faces criminal penalties. KRS § 244.165.

## DISCUSSION

## I.     An Intervenor's Standing to Appeal

Plaintiffs claim that the Wholesalers lack standing to appeal the district court's judgment because Defendants declined to appeal the decision.

As this Court has explained, "[a]n intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing." *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 536-39 (1972)). The intervenor normally has the right to appeal an adverse final judgment by a trial court, just as any other party can. *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375-76 (1987).

Nonetheless, an intervenor seeking to appeal, like any other party, must fulfill the requirements of Article III of the Constitution before it can continue to pursue an action in the absence of the party on whose side intervention was permitted. *Diamond v. Charles*, 476 U.S. 54, 68 (1986). Accordingly, the standing requirement may bar an appeal even though an intervenor had standing before the district court. *United States v. Van*, 931 F.2d 384, 387 (6th Cir. 1991).

Article III of the Constitution confines federal courts to adjudicating actual cases or controversies. *Allen v. Wright*, 468 U.S. 737, 750 (1984). The plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* at 751. To establish injury in fact, a party must allege "'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Although the type of injury that conveys standing has not been precisely defined, the alleged injury must be "distinct and palpable," and "not 'abstract' or 'conjectural' or 'hypothetical.'" *Perry*, 16 F.3d at 691 (quoting *Allen*, 468 U.S. at 751). Palpable economic injuries "have long been recognized as sufficient to lay the basis for standing, with or without a specific statutory provision for judicial review." *Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972).

Here, we find that the Wholesalers face a palpable economic injury that is sufficient to provide the basis for standing. The district court order declaring the in-person requirement of KRS §§ 243.155 and 244.165 unconstitutional allows small farm wineries to sell directly to consumers, thereby bypassing the wholesaler tier of Kentucky's three tier distribution system. Before the district court's ruling, small farm wineries were statutorily prevented from making direct sales unless the in-person purchase requirement was met, and were effectively required to pass through the wholesaler tier if they wished to reach Kentucky consumers. After the district court's ruling, however, small farm wineries can ship up to two cases of wine directly to consumers without an in-person purchase, and the Wholesalers are denied potential profits from each of these sales.

Plaintiffs do not contend that the Wholesalers lack a palpable economic interest in the outcome of the case. Instead, Plaintiffs rely upon *Diamond*, 476 U.S. 54, and *Perry*, 16 F.3d 688, for the proposition that "an intervening trade association does not have standing to appeal a judgment that a state law is unconstitutional if the State accepts the ruling and elects not to appeal."

In *Diamond*, the Supreme Court held that a doctor who had intervened in a challenge to an Illinois abortion law lacked standing to defend the law when the State of Illinois failed to challenge an unfavorable appellate court decision. 476 U.S. at 56. The Court noted that if Illinois had sought review of the decision, both Illinois and the intervenor would have had standing. *Id.* at 63. Diamond, the intervening doctor, attempted to equate his position with that of the opposing parties, doctors who brought suit because the abortion law potentially subjected them to criminal prosecution. The Supreme Court rejected Diamond's argument because Diamond, unlike doctors who had an interest in being free from criminal prosecution, had no judicially cognizable interest in compelling the state to bring criminal prosecutions against other doctors. *Id.* at 64. In a broad statement that is the focus of Plaintiffs in this case, the Court explained that "[b]ecause the State alone is entitled to create a legal code, only the State has the kind of 'direct stake' identified in *Sierra Club* . . . in defending the standards embodied in that code." *Diamond*, 476 U.S. at 65 (quoting *Sierra Club*, 405 U.S. at 740).

However, contrary to Plaintiffs' representations, *Diamond* does not preclude intervenors from appealing when the state fails to appeal, as long as the intervenors can independently establish standing. *Diamond*, *476 U.S.* at 68. *See also Maine v. Taylor*, 477 U.S. 131, 136-37 (1986) (recognizing that "intervenors in lower federal courts may seek review in this Court on their own, so long as they have 'a sufficient stake in the outcome of the controversy' to satisfy the constitutional requirement of genuine adversity") (citation omitted). Ultimately, the *Diamond* Court explained that the intervening doctor lacked standing because he was not able to assert an injury in fact and "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills

the requirements of Art. III." *Diamond*, 476 U.S. at 68. The intervening Wholesalers in this case stand to suffer a concrete economic loss as a result of the district court's judgment and cannot be equated to the intervening doctor in *Diamond*, who had no economic or personal stake in the outcome of the case.

Plaintiffs also rely upon *Perry* to support their argument that the Wholesalers lack standing. In *Perry*, this Court found that NECA, a trade organization, lacked standing to appeal a district court's judgment striking down Michigan's laws governing apprenticeship. Although NECA argued that it had standing because it had an interest in the enforcement of industry safety and quality standards and in the competitiveness of the licensed electrical contractors it represented, this Court found that it was dispositive that Michigan did not appeal the district court's decision. *Perry*, 16 F.3d at 692. Relying upon *Diamond*, this Court held that "because NECA cannot . . . compel the State to enforce a law which it has chosen to abandon, NECA cannot demonstrate the kind of interest necessary to confer standing to prosecute this appeal." *Id.* at 693.

Plaintiffs argue that *Perry* precludes any intervenor from appealing a judgment that a state law is unconstitutional when the state elects not to appeal. While *Perry* does provide support for this argument, we decline to apply *Perry* as broadly as the Plaintiffs suggest, and hold that an intervenor does have standing to appeal an adverse judgment, even if the state declines to appeal it, if the intervenor can independently demonstrate that he fulfills the requirements of Article III.

Our conception of standing comports with the Supreme Court's statement that "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III." *Diamond*, 476 U.S. at 68. *See also Taylor*, 477 U.S. at 136-37; *Sierra Club,* 405 U.S. at 733 (holding that intervenors in lower federal courts may seek appellate review on their own, so long as they have a sufficient stake in the outcome of the controversy to satisfy the constitutional requirement of genuine adversity). It also comports with the Supreme Court's analysis of standing in *Bryant v. Yellen*, where the Supreme Court expressly recognized that a group of intervening farm

workers "had a sufficient stake in the outcome of the controversy to afford them standing to appeal the District Court's decision[,]" notwithstanding the fact that the government, who had the sole power to enforce the statute, had withdrawn. 447 U.S. 352, 367-68 (1980).

As acknowledged in a concurring opinion in *Perry*, there are a number of cases where two private parties were fully entitled to litigate the constitutionality or validity of state statutes. 16 F.3d at 694 (Merritt, J., concurring) (citing *Martin v. Hunter's Lessee*, 14 U.S. 304 (1816); *Gibbons v. Ogden*, 22 U.S. 1 (1824); *Charles River Bridge v. Warren Bridge*, 36 U.S. 420 (1837); *West Coast Hotel v. Parrish*, 300 U.S. 379 (1937); *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950)). These cases reinforce the proposition that private parties can litigate the constitutionality or validity of state statutes, with or without the state's participation, so long as each party has a sufficient personal stake in the outcome of the controversy so as to establish standing.

Ultimately, in a case such as this, where the intervening Wholesalers stand to suffer a concrete economic loss as a result of the district court's judgment, they face the type of palpable economic injuries that "have long been recognized as sufficient to lay the basis for standing." *Sierra Club*, 405 U.S. at 733-34. Accordingly, we conclude that the Wholesalers have standing to pursue this appeal.

## II.     The Constitutionality of the Challenged Statutes

Having found that the Wholesalers have standing to pursue this appeal, we now turn to the Wholesalers' argument that the district court erred when it granted in part Plaintiffs' motion for summary judgment and held portions of Kentucky's statutory provisions unconstitutional.

We review de novo the district court's grant of summary judgment. *Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005). Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A court considering a summary judgment motion considers the facts in the light most favorable to the nonmoving party

and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The constitutionality of a state statute is a question of law which this Court reviews *de novo. Cmtys. for Equity v. Mich. High School Athletic Ass'n*, 459 F.3d 676, 680 (6th Cir. 2006).

## A. Commerce Clause Legal Standards

This case asks the question of whether Kentucky's laws governing the wine industry violate the Commerce Clause. The plaintiff wineries filed suit filed after the Supreme Court invalidated wine-related laws which allowed only in-state wineries to sell and ship wine directly to consumers, *Granholm*, 544 U.S. 460, so a brief examination of that case is warranted.

The *Granholm* Court examined the interaction between the Twenty-first Amendment to the Constitution, which grants broad authority to the states to regulate alcohol importation and distribution, and the Commerce Clause, which prohibits discrimination against out-of-state goods. 544 U.S. at 484-85. The Court held that "the Twenty-first Amendment . . . does not displace the rule that States may not give a discriminatory preference to their own producers." *Id.* at 486; *accord Bacchus Imports, Ltd. V. Dias*, 468 U.S. 263, 275-76 (1984). Although the *Granholm* Court addressed statutes that it deemed to be facially discriminatory, the Court recognized that statutes can discriminate against interstate commerce on their face or in effect. 544 U.S. at 487.[4] Accordingly, when Plaintiffs allege practical effect discrimination, we must turn to other Commerce Clause jurisprudence for guidance.

To determine whether a statute violates the Commerce Clause, this Court must first determine whether the statute discriminates against interstate commerce, either by

---

[4]The Wholesalers argue that *Granholm* is inapplicable to this case because the statutes at issue here are facially non-discriminatory. We reject this argument, noting that the *Granholm* Court clearly acknowledged that statutes may also discriminate in effect. *Id.* at 487 ("when a state statute directly regulates or discriminates against interstate commerce, *or when its effect* is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry") (emphasis added). *See also W. Lynn Creamery v. Healy*, 512 U.S. 186, 201 (1994) ("Commerce Clause jurisprudence is not so rigid as to be controlled by the form by which a State erects barriers to commerce"); *Bacchus*, 468 U.S. at 270 (a statute may be shown to violate the Commerce Clause based either upon its discriminatory purpose or discriminatory effect).

discriminating on its face, by having a discriminatory purpose, or by discriminating in practical effect. *E. Ky. Res. v. Fiscal Court of Magoffin County, Ky.*, 127 F.3d 532, 540 (6th Cir. 1997) (citing *Wyoming v. Oklahoma*, 502 U.S. 437, 454-55 (1992)). If the statute is not discriminatory, it is valid "unless the burdens on interstate commerce are 'clearly excessive in relation to the putative local benefits.'" *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970)). *See also United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 127 S. Ct. 1786, 1797 (2007) (holding that *Pike* applies when a law is directed to legitimate local concerns, with effects upon interstate commerce that are only incidental).

If the statute is discriminatory, however, it is virtually per se invalid, unless the state can demonstrate that it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Granholm*, 544 U.S. at 489.[5]

### B. The Discriminatory Nature of the Kentucky Statutes

Turning to Kentucky's statutory scheme, the threshold question is whether the in-person purchase requirements of KRS §§ 243.155 and 244.165 are discriminatory.

Plaintiffs concede that the statutes are not facially discriminatory, but argue that the statutes discriminate against out-of-state wineries in practical effect. In order to show that a law discriminates in practical effect, Plaintiffs must show "both how local economic actors are favored by the legislation, and how out-of-state actors are burdened by the legislation." *E. Ky. Res*., 127 F.3d at 543.

---

[5] This Court recently decided another case examining wine regulations, *Jelovsek v. Bredesen*, 545 F.3d 431 (6th Cir. 2008), which also interpreted the Supreme Court's decision in *Granholm*. This Court upheld Tennessee's ban on direct shipment of wine to consumers, holding that the ban did not violate the Commerce Clause because it applied equally to in-state and out-of-state wineries. *Id.* at 436. We rejected other provisions of Tennessee's statutory scheme, however, holding that they were facially discriminatory in violation of the Commerce Clause. *Id.* at 440. These provisions included, *inter alia*, portions of a Grape and Wine Law which restricted winery licenses to individuals who had been Tennessee residents for at least two years and permitted Tennessee wineries to sell directly to customers without an additional license if they used a sufficient percentage of Tennessee-grown grapes in their wine production. *Id.* at 434. This case did not address the validity of an in-person purchase requirement such as the requirement that is at issue here.

Plaintiffs argue, and the district court agreed, that the challenged statutes satisfy this requirement because they present an economic barrier that both benefits in-state wineries and burdens out-of-state wineries by making it financially infeasible for out-of-state wineries to sell directly to Kentucky residents. Plaintiffs contend that with the statutes in place, out-of-state wineries are either forced to incur the added cost of paying a wholesaler or they must wait for Kentucky consumers to travel up to 4800 miles to purchase out-of-state wine. Plaintiffs also claim that the in-person purchase requirement benefits local wineries because it "grants in-state wineries access to the State's consumers on preferential terms" by driving up the cost of out-of-state wine, as condemned in *Granholm*, 544 U.S. at 474-75.

Plaintiffs present evidence that in Oregon, where Plaintiff Cherry Hill Vineyards operates, there are approximately 300 wineries, most of which are small wineries like Cherry Hill. Only 13 of these wineries supply wine to Kentucky, and some of those sell only to restaurants. Plaintiffs argue that many small wineries do not produce enough wine or have sufficient consumer demand to make it economical for wholesalers to carry their products. The majority of wineries who do not have a wholesaler are foreclosed from the Kentucky market altogether unless they can take orders directly from Kentucky residents and ship wine. Under Kentucky's in-person requirement, even if a winery has established a relationship with an individual consumer or a restaurant and has verified their age and shipping address, the customer must travel to the winery each time he or she wishes to execute a purchase.

In support of these general allegations, Plaintiff Cherry Hills avers that in order to distribute their wine through a wholesaler, they and other wineries pay up to 50% of their profits to the wholesaler, which can result in a profit differential of $10-15 per bottle of wine. Plaintiffs also presented evidence of customers, including Plaintiffs Schneider and Reilly, who would buy wines directly from out-of-state wineries but for the in-purchase requirement. Plaintiffs reference and discuss a Federal Trade Commission ("FTC") report which concluded that state laws like Kentucky's, which prevent direct sales and force producers to use wholesalers, create an

anticompetitive barrier to e-commerce for small wineries. Federal Trade Commission, *Possible Anticompetitive Barriers to E-Commerce: Wine* (2003), *available at* http://www.ftc.gov/os/2003/07/winereport2.pdf.

Based on this evidence, we agree that Kentucky's in-person requirement makes it economically and logistically infeasible for most consumers to purchase wine from out-of-state small farm wineries. It is impractical for customers to travel hundreds or thousands of miles to purchase wine in-person, and out-of-state wineries are clearly burdened by Kentucky's regulatory scheme.

Plaintiffs must also show how local economic actors are favored by the legislation *See E. Ky. Res.*, 127 F.3d at 532. The benefits to state actors flow from the same facts discussed above. Because of the economic and logistical barriers caused by the in-person requirement, small Kentucky wineries benefit from less competition from out-of-state wineries, especially from wineries in states such as Oregon, which are located a great distance from Kentucky and whose wine may be deemed distinct or preferable by consumers. Kentucky's wholesalers receive benefits that are even more direct: based upon the evidence presented by Plaintiffs, wineries such as Cherry Hill and customers such as Reilly and Schneider would bypass Kentucky's wholesalers altogether if the in-person purchase requirement were lifted. As a consequence, the statute guarantees the Wholesalers a source of revenue that would not exist but for the statute.

This Court finds that Plaintiffs have presented specific evidence that meets the burden of showing "both how local economic actors are favored by the legislation, and how out-of-state actors are burdened by the legislation." *See E. Ky. Res.*, 127 F.3d at 532. Accordingly, this Court concludes that Plaintiffs have demonstrated that the challenged statutes discriminate against interstate commerce in practical effect.

### C. Strict Scrutiny Analysis

Our conclusion that the challenged statutes are discriminatory does not end the inquiry. This Court must also consider whether Kentucky's statutory regime "advances a legitimate local purpose that cannot be adequately served by reasonable

nondiscriminatory means." *See Granholm*, 544 U.S. at 489 (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988)).

The Wholesalers argue that the in-person requirement was motivated by Kentucky's extensive problems with underage drinking. They provide and reference a number of reports that discuss the problem of underage drinking and argue that the elimination of the in-person requirement would create negative effects on alcohol enforcement.

This argument is almost identical to an argument that was presented and rejected in *Granholm*. Based in part upon a report from the Federal Trade Commission, the *Granholm* Court found "little evidence that the purchase of wine over the Internet by minors is a problem," and noted that wine is not the alcoholic beverage of choice among youth. 544 U.S. at 490. The *Granholm* Court also remarked that even if there was a risk of minors receiving direct shipments of wine, this risk is not addressed solely by prohibiting shipment from wineries. As a less restrictive step to address this risk, the Court pointed to the Model Direct Shipping Bill which would require age-verification upon delivery of wine. *Id*. at 491.

We agree with the reasoning of the *Granholm* Court, and note that the Wholesalers have not presented evidence about underage drinking that is unique to Kentucky and would warrant a different result. Also, as the district court noted, Defendants and the Wholesalers presented no evidence that small farm wineries and their shippers cannot or will not comply with existing or future shipping laws governing deliveries of alcoholic beverages to Kentucky customers. Therefore, consistent with the *Granholm* Court's finding, we conclude that age verification upon delivery of wine is a reasonable nondiscriminatory means to address the proferred state interest.

The Wholesalers also reference Defendants' arguments in the district court, which include an argument that the in-person sales requirement is motivated by concerns for tax revenue. Defendants predicted a heavy loss in sales and use tax if internet wine sales were permitted. However, as the district court noted in its opinion, this argument appears to assume that internet sales would be permitted without restrictions. *Cherry*

*Hill Vineyards*, 488 F. Supp. at 620. Again, the *Granholm* Court addressed and rejected a similar argument, and found that states can adequately collect tax revenue through requiring a permit as a condition of direct shipping, relying upon self-reporting, and utilizing federal remedies. This reasoning is directly applicable because, like the defendants in *Granholm*, the Wholesalers have "not shown that tax evasion from out-of-state wineries poses such a unique threat that it justifies discriminatory regimes." 544 U.S. at 491-92.

Ultimately, the Wholesalers fail to establish that the state regime advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory means. Consequently, we conclude that Kentucky's in-person purchase requirement, which is discriminatory in practical effect, violates the dormant Commerce Clause.

### III.     The Choice of Remedy

Finally, the Wholesalers argue that even if the in-person requirement does discriminate against interstate commerce, the district court erred in its choice of remedy.

This Court reviews the terms of an injunction issued by the district court for an abuse of discretion. *Herman Miller v. Palazzetti Imports and Exports*, 270 F.3d 298, 326-27 (6th Cir. 2001). The district court abuses its discretion if it "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *United States v. Szoka*, 260 F.3d 516, 521 (6th Cir. 2001).

When a district court finds that a statute is constitutionally defective, the court "may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion." *Califano v. Westcott*, 443 U.S. 76, 89 (1979) (quoting *Welsh v. United States*, 398 U.S. 333, 361 (1970)). Although the choice between extension and nullification is within the constitutional competence of a federal district court, ordinarily extension, rather than nullification is the proper course.

*Heckler v. Mathews*, 465 U.S. 728, 739 n.5 (1984). However, when making this choice, the district court must remain conscious not to circumvent the legislature's intent. *Id.*

Here, the district court invalidated the in-person requirements of KRS §§ 243.155 and 244.165 and enjoined Defendants from enforcing them, effectively extending direct shipping rights to both in-state and out-of-state small farm wineries, subject to the two case limit set forth in the statutes. The Wholesalers argue that the district court circumvented the legislature's intent by allowing uninhibited direct shipping, and that a nullification remedy that banned all forms of direct shipment, both in-state and out-of-state, would have respected the intent of the legislature.

In support of this argument, the Wholesalers cite a number of district court decisions in which the district court chose to apply the nullification remedy after determining that a wine regulatory scheme violated the Commerce Clause. It is telling, however, that Wholesalers do not argue that the district court was *required* to apply the nullification remedy, and that they are unable to cite an appellate court case reversing a district court case for failing to apply such a remedy.

Plaintiffs, on the other hand, argue that because the General Assembly allowed direct shipping subject to the statutory limitations, the legislature clearly intended both to restrict youth access through age verification and to *allow* direct sales and shipments. They argue that either remedy the district court could have chosen would have nullified one part of the legislative will and affirmed the other.

We find that although a nullification remedy was permissible, it is debatable whether it would have been more consistent with the legislature's intent. Ultimately, the terms of an injunction are left to the discretion of the district judge. *Herman Miller,* 270 F.3d at 326-27. Here, there is no indication that the district court applied the wrong legal standard, misapplied the correct legal standard, or relied on clearly erroneous findings of fact. Consequently, we conclude that the district court did not abuse its discretion by choosing between two permissible options for remedying a statute it found to be unconstitutional.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.