PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 08-3268 and 08-3302
_____

ROBERT FREEMAN; JUDY FREEMAN;
WALTER HANSEL WINERY, INC.;
OLIVER WINE COMPANY, INC.;
MEYER FRIEDMAN;  BEVERLY FRIEDMAN

v.

JON S. CORZINE, Governor of New Jersey;
ANNE MILGRAM, Attorney General of New Jersey;
JERRY FISCHER, Director of the New Jersey
Division of Alcoholic Beverage Control

R&R MARKETING, L.L.C.; ALLIED BEVERAGE
GROUP, L.L.C.;
FEDWAY ASSOCIATES, INC.
(Pursuant to F.R.A.P. 43(c))

Jerry Fischer, Director of the New Jersey
Division of Alcoholic Beverage Control,
Appellant in 08-3268

Robert Freeman; Judy Freeman; Walter Hansel Winery, Inc.
Meyer Freeman; Beverly Freeman,
Appellants in 08-3302

1

_____

Appeals from the United States District Court
for the District of New Jersey (D.C. No. 03-3140)
District Judge: Honorable Katharine S. Hayden

_____

**Argued**
**February 1, 2010**

Before: McKEE and HARDIMAN, *Circuit Judges*,
and POLLAK, *District Judge*.[*]

(Filed: December 17, 2010)

James A. Tanford [ARGUED]
Indiana University
Maurer School of Law
211 South Indiana Avenue
Bloomington, IN 47405

Robert D. Epstein
Epstein Cohen Donahoe Mendes
50 South Meridian Street, Suite 505
Indianapolis, IN 46204

_____

[*] Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

2

Gary S. Redish
Winne, Banta, Hetherington, Basralian & Kahn P.C.
21 Main Street
Hackensack, NJ 07602
*Counsel for Appellees/Cross-Appellants Robert Freeman, et al.*

Anne Milgram
Lisa Hibner Tavani [ARGUED]
Lorinda Lasus
Office of the Attorney General of New Jersey
140 East Front Street
P.O. Box 087
Trenton, NJ 08625
*Counsel for Appellant/Cross-Appellee Jerry Fischer*

Deborah A. Skakel [ARGUED]
Dickstein Shapiro, LLP
1633 Broadway
New York, NY 10019-6708

Carmine R. Villani, Esq.
Villani & DeLuca
703 Richmond Avenue
Point Pleasant Beach, NJ
08742-0000
*Counsel for Intervenor-Appellee R&R Marketing, LLC*

Ross A. Lewin [ARGUED]
Drinker Biddle & Reath LLP
105 College Road East
Princeton, NJ 08542
*Counsel for Intervenor-Appellee Fedway Associates, Inc.*

OPINION OF THE COURT

POLLAK, *District Judge*

Plaintiffs – two New Jersey wine enthusiasts, a New Jersey couple who seeks access to more Kosher wines, and a California winery – have brought suit in the United States District Court for the District of New Jersey against Jerry Fischer, New Jersey's Director of Alcoholic Beverage Control, alleging that several aspects of New Jersey's Alcoholic Beverage Control Law ("ABC Law") infringe on the dormant Commerce Clause in violation of 42 U.S.C. § 1983.

**I.**

New Jersey law, like the laws of many states, establishes a "three-tier" structure for alcohol distribution and sales. Pursuant to that structure, alcoholic beverages are sold by (1) suppliers and manufacturers to (2) wholesalers, who in turn sell to (3) retailers, who then sell alcohol to consumers.

4

In *Granholm v. Heald*, 544 U.S. 460 (2005), the Supreme Court reaffirmed the view expressed by five justices in *North Dakota v. United States*, 495 U.S. 423 (1990), that such a "three-tier system . . . is 'unquestionably legitimate.'" *Granholm*, 544 U.S. at 489 (citing *North Dakota*, 495 U.S. at 432 (plurality op.) & *id.* at 447 (Scalia, J., concurring in the judgment)). The *Granholm* Court nevertheless cautioned that "straightforward attempts to discriminate in favor of local producers" of alcoholic beverages by, for instance, "subjecting out-of-state [producers], but not local ones, to the three-tier system," are "contrary to the Commerce Clause and . . . not saved by the [states' authority to regulate alcoholic beverages under] the Twenty-first Amendment." *Id.* at 474, 489 (internal quotation marks omitted).

Plaintiffs filed this suit in 2003, contending that five aspects of New Jersey's laws regulating wine contravene this nondiscrimination principle in violation of the dormant

5

Commerce Clause. The first two statutory provisions at issue involve privileges relating to the sale of wine to consumers and retailers that are afforded to wineries that obtain New Jersey plenary or farm winery licenses, but not to wineries lacking such licenses. Plenary licenses may be obtained by producers that "grow[] and cultivat[e] grapes . . . on at least three acres on, or adjacent to, the winery premises," but only if the wine "is produced, blended, fortified, or treated by the licensee on its licensed premises situated in the State of New Jersey." N.J. Stat. Ann. § 33:1-10(2a). Farm winery licenses, meanwhile, are available to wineries which produce less than 50,000 gallons of wine per year and which, "for the first five years of the operation of the winery," produce wine that is "from at least 51% grapes or fruit grown in the State" of New Jersey. Id. § 33:1-10(2b). Holders of either type of license ("in-state wineries") may sell their wines "at retail to consumers" at the winery and at "six salesrooms apart from

6

the winery premises." *Id.* §§ 33:1-10(2a) & (2b).[1] In-state

wineries are also permitted to sell their wines "to wholesalers

and retailers." *Id.* Wineries that do not hold either a plenary

or a farm winery license ("out-of-state wineries"), by contrast,

must funnel their wines through the three-tier system by

selling to wholesalers.

Plaintiffs also challenge two aspects of New Jersey's

rules regarding the personal importation of wine. N.J. Stat. §

33:1-2(a) provides in pertinent part as follows:

> Alcoholic beverages intended in good faith
> solely for personal use may be transported, by
> the owner thereof, in a vehicle other than that of
> the holder of a transportation license, from a
> point outside this State to the extent of . . . one
> gallon of wine . . . within any consecutive

---

[1] The statute also provides that "one salesroom per county may be jointly controlled and operated by at least two plenary or farm winery licensees for the sale of the products of any plenary or farm winery licensee for consumption on or off the premises." N.J. Stat. §§ 33:1-10(2a) & (2b). Plaintiffs do not challenge this provision on appeal.

7

period of 24 hours; provided, however, that except pursuant to and within the terms of a license or permit issued by the director, no person shall transport into this State or receive from without this State into this State, alcoholic beverages where the alcoholic beverages are transported or received from a state which prohibits the transportation into that state of alcoholic beverages purchased or otherwise obtained in the State of New Jersey. If any person or persons desire to transport alcoholic beverages intended only for personal use in quantities in excess of those above-mentioned, an application may be made to the director who may, upon being satisfied of the good faith of the applicant, and upon payment of a fee[2] . . . issue a special permit limited by such conditions as the director may impose, authorizing the transportation of alcoholic beverages in quantities in excess of those above-mentioned.

Plaintiffs challenge both the one-gallon cap on importation and the reciprocity provision prohibiting importation of wine from states that bar the entry of New Jersey wine.

Finally, plaintiffs seek to invalidate New Jersey's ban

---

[2] While the language of the statute sets the fee at $25, *see* N.J. Stat. § 33:1-2(a), defendant's certification to the District Court indicates that the fee is $50.

8

on direct shipments of wine from wineries to consumers via common carrier. When plaintiffs filed suit in 2003, the ABC Law allowed in-state, but not out-of-state, wineries to make such shipments. However, in anticipation of *Granholm*, which invalidated similar provisions of Michigan and New York law, the New Jersey legislature rescinded this privilege, resulting in a ban on all direct shipments of wine from producers to New Jersey residents.

After three New Jersey wholesalers – Fedway Associates, R&R Marketing, and Allied Beverage Group – intervened in the District Court on behalf of the defendant, the parties filed cross-motions for summary judgment, contesting (1) plaintiffs' standing to sue, and (2) the validity of the above portions of New Jersey's ABC Law. The District Court held that plaintiffs met the applicable standing requirements, and that the challenged provisions were largely constitutional. Both sides appealed. We have jurisdiction pursuant to 28

U.S.C. § 1291.[3]

## II.

"Standing implicates both constitutional requirements and prudential concerns." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009). Constitutional standing, which should be considered "before examining issues of prudential standing," *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 175 (3d Cir. 2001), includes three well-known elements:

> "(1) an injury in fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)."

---

[3] 28 U.S.C. § 1291 provides "[t]he courts of appeals" with jurisdiction over, *inter alia*, "all final decisions of the district courts of the United States."

*Common Cause of Pa.*, 558 F.3d at 258 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 128 S. Ct. 2531, 2535 (2008)). "'The party invoking federal jurisdiction bears the burden of establishing these elements,'" and, on summary judgment, "the plaintiff cannot rely on mere allegations 'but must set forth by affidavit or other evidence specific facts'" demonstrating that these requirements have been met. *Joint Stock Soc'y*, 266 F.3d at 175 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (internal quotation marks and citation omitted).

An injury-in-fact must be "a palpable and distinct harm" that, even if "widely shared," "'must affect the plaintiff in a personal and individual way.'" *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009) (quoting *Defenders of Wildlife*, 555 U.S. at 560 n.1). The causation prong then "focuses on who inflicted [the] harm." *Id.* at 142. While "[t]he plaintiff must establish that the defendant's

11

challenged actions, not the actions of some third party, caused the plaintiff's injury," "[t]his causal connection need not be as close as the proximate causation needed to succeed on the merits of a tort claim," and "an indirect causal relationship will suffice." *Id.* Finally, the redressability prong "looks forward" to determine whether "'the injury will be redressed by a favorable decision.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000)). "Redressability is not a demand for mathematical certainty," but it does require "a 'substantial likelihood'" that the injury in fact can be remedied by a judicial decision. *Id.* at 143 (quoting *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

"The requirements of prudential standing," meanwhile, "serve 'to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those best suited to assert a

12

particular claim.'" *Joint Stock Soc'y*, 266 F.3d at 179

(quoting *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 225 (3d Cir. 1998)). Prudential standing

> "require[s] that (1) a litigant assert his [or her] own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based."

*Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County*, 271 F.3d 140, 146 (3d Cir. 2001) (quoting *Davis v. Phila. Hous. Auth.*, 121 F.3d 92, 96 (3d Cir. 1997)) (emphasis omitted). Although "the zone of interests 'test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit,'" "'[t]he test is not meant to be especially demanding.'" *Davis*, 121 F.3d at 98 (quoting *Clarke v. Secs.*

13

*Indus. Ass'n*, 479 U.S. 388, 399-400 (1987)).

## A.

We first consider whether plaintiffs Robert and Judy Freeman have standing to sue. The Freemans describe themselves as "wine collectors" and "home winemakers" who travel to the west coast several times each year in order to visit wineries. They allege that the ABC Law has prevented them from obtaining several wines they would like to drink, but which are unavailable in New Jersey stores. The Freemans state that they would ideally like to receive direct shipments from wineries, but they also assert that (1) New Jersey law allows them to buy in-state, but not out-of-state, wines directly from producers at wineries and storefronts, and (2) traveling to distant wineries in order to return with small quantities of wine is highly impracticable.

### (1)

The Freemans argue that they are unable to obtain

wines that they desire via interstate commerce. In addressing

the same argument, the Seventh Circuit has concluded that

when "plaintiffs want to drink [wines that] are not carried by

[in-state] resellers" and are prevented from otherwise

obtaining those wines by state law, they have "establishe[d]

injury in fact." *Bridenbaugh v. Freeman-Wilson*, 227 F.3d

848, 849 (7th Cir. 2000); *accord Baude v. Heath*, No. 05-cv-

735, 2007 WL 2479587, at *7-*8 (S.D. Ind. Aug. 29, 2007),

*rev'd in part on other grounds*, 538 F.3d 608 (7th Cir. 2008);

*Cherry Hill Vineyards, LLC v. Hudgins*, 488 F. Supp. 2d 601-

607-08 (W.D. Ky. 2006), *aff'd sub nom. Cherry Hill

Vineyards, LLC v. Lilly*, 553 F.3d 423 (6th Cir. 2008). We

agree. The Freemans are directly constrained by the

provisions of the ABC Law preventing the importation of (1)

more than a gallon of out-of-state wine without a special

permit, and (2) any wine from states that prohibit the

importation of New Jersey wines. Moreover, although the

15

Freemans are "not in the business of selling alcoholic beverages and therefore could not violate" the other statutory provisions at issue "if they tried," *Bridenbaugh*, 227 F.3d at 847, "cognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates," *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997). Rather, "customers of that class may also be injured." *Id.* As a result, the Freemans – who allege that New Jersey law discriminates against the out-of-state wineries of which they are customers – have suffered an injury in fact.

The question then becomes whether the Freemans' injury is fairly traceable to the statutes at issue. As an initial matter, we reject defendant's contention that the traceability prong is not met because New Jersey's statutory scheme does not, in fact, offend the dormant Commerce Clause. "'Standing in no way depends on the merits of the plaintiff's

16

contention that the particular conduct is illegal . . . .'" *Marion v. TDI, Inc.*, 591 F.3d 137, 149 (3d Cir. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). The question for purposes of the traceability prong is not whether the ABC Law is unconstitutionally discriminatory, but rather whether, be it even-handed and constitutional or not, it is causally connected to plaintiffs' injury in fact. We thus consider whether plaintiffs have presented evidence that each of the challenged provisions impedes their ability to purchase wine in interstate commerce.

The first two of plaintiffs' challenges are to provisions of New Jersey law that effectively allow in-state wineries to sell directly to consumers and retailers, but forbid out-of-state wineries from engaging in sales to anyone but wholesalers. The question as to traceability is whether these provisions exclude wine from New Jersey that would otherwise appear on the market, thereby limiting the number of out-of-state

17

wines that the Freemans may purchase. Cutting against the view that the Freemans are traceably injured by their resultant inability to purchase a wide array of out-of-state wines is the fact that the record does not clearly establish that any out-of-state wineries would, but for the statute, open retail sales rooms in New Jersey. Pointing in the other direction is record evidence that many out-of-state wineries have attempted, without success, to interest New Jersey wholesalers in their wines, and that other out-of-state wineries will not try either to (1) enter the three-tier system via a wholesaler, because doing do so would cut deeply into profits,[4] or (2) obtain their

---

[4] For example, Edward O'Keefe, Sr., the owner of Chateau Grand Traverste, a Michigan winery, stated the following: "Our winery does not currently have a distributor in New Jersey. If we were to obtain a distributor, we would be forced to give up approximately 40-50% of our profits to the distributor. Our business model is based on both sales out of the tasting room, use of distributors in specific states, and direct shipment. It is our experience that direct sales to the consumer either at the tasting room or through delivery by common carrier is the most profitable to us." JA 222

18

own wholesaler license, which can be prohibitively expensive.

Plaintiffs, in other words, have presented evidence that

numerous out-of-state wineries have, without success, sought

alternative ways to enter the New Jersey marketplace. We

conclude that, taken in the aggregate, this evidence suffices to

show that part of plaintiffs' injury is traceable to New Jersey's

choice to deny out-of-state wineries the ability to sell directly

both to retailers and to consumers.

Plaintiffs have also presented evidence that they would

return from their winery trips with more wine if New Jersey

law so allowed. Accordingly, part of their inability to buy

certain wines may be traced to the transportation restrictions

in the ABC Law.[5] And there is little question that the

---

(O'Keefe affidavit ¶¶ 9-13) (numbering omitted).

[5] Defendant and intervenors attempt to resist this conclusion by arguing that the state has never enforced the transportation restrictions when individuals import wine intended for personal use. We reject this argument, because

19

Freemans' injury partially traces to the direct shipment ban. They have attempted to order wine shipments from at least five out-of-state wineries, each of which has refused to make the shipments. Plaintiffs have also presented evidence, both drawn from their own experience and in the form of a Federal Trade Commission report, that a sizeable number of wineries sell their wine exclusively via direct shipment. Taken together, this evidence is more than adequate to demonstrate that there is a "fairly traceable connection between the alleged injury in fact and" the direct shipment ban. *Toll Bros.*, 555 F.3d at 142 (internal quotation marks omitted).

The same evidence that demonstrates causation

---

defendant has not presented any official, binding assurance that the statute will not be enforced as written. Moreover, we note that the ABC Law has been repeatedly amended by the legislature without any alteration of the transportation restrictions, a fact which suggests that, whatever defendant's current practice regarding the statute, the New Jersey legislature intends for it to be enforced.

suffices, in this case, to demonstrate redressability: Removing the restrictions placed by the ABC Law on consumers and out-of-state wineries would, on this record, lead to greater availability of a greater number of wines that plaintiffs wish to purchase.[6]

**(2)**

The Freemans also have prudential standing to challenge the statutory provisions at issue. While defendant argues that the Freemans, who knew plaintiffs' counsel in this case before it was filed, are thereby without a personal stake in its outcome, there is no evidence that the Freemans' œnophilia, upon which

---

[6] Intervenors argue that the redressability prong is not met as to the direct shipment ban because *all* wineries are prohibited from making direct shipments, meaning that invalidating the ban would necessarily entail the creation of new rights. But assuming that plaintiffs are correct in their argument that the direct shipment ban disproportionately affects out-of-state wineries, striking down the ban would do no more than vindicate the well-recognized rule that state laws may not discriminatorily favor intrastate commerce over interstate commerce.

21

their standing is grounded, is anything but sincere, or that they are actually attempting to litigate an interest held by their attorneys. Similarly, there is no indication that the Freemans have come to court with a generalized grievance; their injury as wine enthusiasts who wish to purchase certain wines is a highly particularized one.

The remaining question as to the Freemans, then, is whether or not they fall within the "zone of interests" protected by the dormant Commerce Clause. Insofar as the regulations "directly affect[]" the Freemans as individuals "participating in commerce," they have standing to redress "their dormant Commerce Clause right to access interstate markets." *Oxford Assocs.*, 271 F.3d at 148. The Freemans may accordingly proceed with their challenge to the importation restrictions, which directly regulate their participation in interstate commerce.

The other provisions, by contrast, directly regulate

22

producers, not consumers,[7] and we have not previously addressed the issue of whether dormant Commerce Clause plaintiffs have prudential standing when they are not directly regulated by the statute at issue. *See id.* at 148 n.4 (reserving this question). We now hold that such plaintiffs can come within the zone of interests if their "ability to freely contract with out-of-state companies was directly infringed by local regulation." *Id.* at 149 (Barry, J., dissenting). We adopt this rule because such plaintiffs seek to vindicate interests related to the protection of interstate commerce. In particular, plaintiffs who seek to protect "the right as a consumer to purchase . . . services across State boundaries" assert interests closely related to the purposes of the dormant Commerce Clause. *Huish Detergents, Inc. v. Warren County*, 214 F.3d 707, 711 (6th Cir.

---

[7] It is arguable that consumers are also directly regulated by the direct shipment ban, but we will assume, *arguendo*, that they are not.

23

2000). *See also, Oehrleins, Ben Oehrleins & Sons & Daughter v. Hennepin County*, 115 F.3d 1372, 1381 (8th Cir. 1997) (suggesting that standing is appropriate where plaintiffs "s[eek] to protect their own rights to purchase goods or do business across state borders"). By contrast, plaintiffs are without prudential standing if their interest is unrelated to the asserted "barrier to interstate commerce." *On the Green Apartments L.L.C. v. City of Tacoma*, 241 F.3d 1235 (9th Cir. 2001) (internal quotation marks omitted). For instance, plaintiffs who "allege only that a party with whom they contract is subject to an undue burden on its ability to freely participate in interstate commerce" are not within the zone of interests protected by the dormant Commerce Clause. *Oxford Associates*, 271 F.3d at 149 (Barry, J., dissenting). Neither are plaintiffs whose interest is merely one in avoiding a passed-on fee or cost. *See Individuals for Responsible Gov't, Inc. v. Washoe County*, 110 F.3d 699, 703 (9th Cir. 1997); *Oehrleins*, 115 F.3d at 1380; *see also*, *e.g.*

*City of Los Angeles v. County of Kern*, 581 F.3d 841, 848 (9th Cir. 2009) ("As the name implies, the zone of interest test turns on the interest sought to be protected, not the harm suffered by the plaintiff.").

In challenging the prohibitions on direct sales by out-of-state wineries and the direct shipment ban, the Freemans present themselves as in-state consumers wishing to access out-of-state products. Their interest in overturning these features of New Jersey law therefore dovetails with the commerce-protective purpose of the dormant Commerce Clause. The Freemans accordingly satisfy the zone-of-interest test as to all of the challenged provisions of the ABC Law.

## B.

"[T]he presence of one plaintiff with standing is sufficient to satisfy that requirement." *Forum for Academic & Institutional Rights v. Rumsfeld*, 390 F.3d 219, 228 n.7 (3d Cir. 2004) (citing *Bowsher v. Synar*, 478 U.S. 714, 721 (1986)),

*rev'd on other grounds*, 547 U.S. 47 (2006). Accordingly, having concluded that the Freemans possess both constitutional and prudential standing to raise all of the claims at issue, we do not consider the standing of the other plaintiffs.

### III.

"The dormant Commerce Clause 'prohibits the states from imposing restrictions that benefit in-state economic interests at out-of-state interests' expense, thus reinforcing the principle of the unitary national market.'" *Am. Trucking Ass'ns v. Whitman*, 437 F.3d 313, 318 (3d Cir. 2006) (quoting *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 210 (3d Cir. 2002)) (internal quotation marks omitted). The clause "therefore prohibits a state from impeding free market forces to shield in-state businesses from out-of-state competition." *Id.*

Any statute that "discriminates against interstate commerce on its face or in effect" is thus "subject to heightened

26

scrutiny." *Id.* at 319. "The party challenging the statute has the burden of proving" that the statute is discriminatory, *Cloverland-Green Spring-Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 462 F.3d 249, 261 (3d Cir. 2006) ("*Cloverland II*"), but if the plaintiff meets that burden, "the State must demonstrate (1) that the statute serves a legitimate local interest, and (2) that this purpose could not be served as well by available non-discriminatory means," *Am. Trucking Ass'ns*, 437 F.3d at 319. If the plaintiff does not meet its burden of showing that the statute is discriminatory, we instead use "the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), to determine whether the burdens on interstate commerce substantially outweigh[] the putative local benefits." *Cloverland II*, 462 F.3d at 258.

Historically, courts have struggled with the question of to what extent the dormant Commerce Clause applies in the context of alcoholic beverage restrictions, given the broad

27

regulatory authority granted to states by section 2 of the Twenty-First Amendment.[8]  In *Granholm*, however, the Supreme Court reiterated that dormant Commerce Clause principles apply in the context of regulations on the shipment of wine.  In fact, in the Court's view, it is "essential to the foundations of the Union" that "in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'"  *Granholm*, 544 U.S. at 472 (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 99 (1994)).  Thus, the Court held that "Section 2 does not allow States to regulate the direct shipment of wine on terms that discriminate in favor of in-state producers," *id.* at 476,

---

[8]     Section 2 of the Twenty-First Amendment provides that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

and that "straightforward attempts to discriminate in favor of local producers" are "not saved by the Twenty-first Amendment," *id.* at 489. As a result, unless the state "show[s] that 'the discrimination is demonstrably justified,'" statutes regulating alcohol that discriminate against interstate commerce must be invalidated. *Id.* at 492 (quoting *Chem. Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 344 (1992)). The *Granholm* Court, however, also held that "the three-tier system itself is 'unquestionably legitimate,'" and that "[s]tate policies are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent." *Id.* at 489 (quoting *North Dakota*, 495 U.S. at 432).

## A.

We first consider plaintiffs' challenges to the statutory provisions allowing only in-state wineries to sell directly to retailers and consumers.

### (1)

In *Granholm*, the Supreme Court clarified that "[t]he mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States." 544 U.S. at 472. In particular, when "all out-of-state wine, but not all in-state wine, [must] pass through an in-state wholesaler and retailer before reaching consumers," "[t]he discriminatory character of a system is obvious." *Id.* at 473-74. Thus, direct and indirect methods "of subjecting out-of-state wineries, but not local ones, to the three-tier system" contravene the dormant Commerce Clause. *Id.* at 474.

The ABC Law violates this rule by allowing in-state, but not out-of-state, wineries to sell directly to consumers. In-state wineries are thereby allowed to skip the first two tiers – wholesalers and retailers – while out-of-state wineries must involve both of these tiers in order for their wine to reach consumers. Accordingly, these aspects of the ABC Law are subject to strict scrutiny as discriminatory on their face.

30

Defendant and intervenors raise three arguments to the contrary, none of which is persuasive. First, defendant argues that, because each location at which an in-state winery sells wine is considered to be a part of the winery premises, all sales are technically "on-premises" – meaning that the law is non-discriminatory, because, by definition, only New Jersey wineries have premises in New Jersey. This transparent attempt at obfuscation is, however, squarely at odds with the statutory language allowing in-state wineries to sell wines "in six salesrooms *apart from the winery premises.*" N.J. Stat. §§ 33:1-10(2a) & (2b) (emphasis supplied).

Second, defendant and intervenors asseverate that the law is non-discriminatory because out-of-state wineries may sell directly to consumers on their own premises in their home states. This argument misconceives the demands of the dormant Commerce Clause. The dormant Commerce Clause does not protect the rights of all wineries to engage in the same form of

31

commerce; it prohibits states from treating in-state-wineries differently from out-of-state wineries. *See, e.g., Granholm,* 544 U.S. at 472. Because this regulation mandates differential treatment, it is discriminatory, even if the wineries are, in some sense, competing on an equal footing.

Finally, intervenors argue that *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d 28 (1st Cir. 2007), which upheld privileges given by Maine to small wineries against a Commerce Clause challenge, should persuade us to uphold the direct-sale provisions of the ABC Law. The statute in *Baldacci*, however, made "[f]arm winery licenses . . . available on equal terms to in-state and out-of-state vineyards alike." *Id.* at 36. In fact, the *Baldacci* court explained that this aspect of the Maine law was what protected it from the charge that it "explicitly discriminate[s] against interstate commerce." *Id.* Because New Jersey allows only in-state wineries to sell directly to consumers, precisely this

32

equal-handedness is absent from the direct-sales provisions of the ABC Law. *Baldacci* supports our view that the direct-sale provisions of the ABC Law are facially discriminatory.[9]

**(2)**

New Jersey law also authorizes in-state wineries to bypass wholesalers and sell directly to retailers. This privilege again allows in-state, but not out-of-state, wineries to circumvent portions of the three-tier system. As a result, it, too, is facially discriminatory against interstate commerce.

Contrary to the District Court's conclusion, the discriminatory character of these provisions would not be cured by allowing out-of-state wineries to become licensed

---

[9] The District Court partially upheld the direct-sale provisions on the ground that out-of-state wineries could obtain wholesaler licenses that would allow them to sell wine directly to consumers. Both plaintiffs and defendant argue that this interpretation of the ABC Law is flawed, and we agree. In keeping with the three-tier structure, wholesale licenses only allow the licensee to sell "to wholesalers and retailers," not to consumers. N.J. Stat. §§ 33:1-11(2a) & (2b).

wholesalers.[10] Assuming, *arguendo*, that an out-of-state winery may, under New Jersey law, eliminate the use of third-party wholesalers by purchasing such a license, any winery purchasing a wholesale license would nevertheless, unlike in-state producers, be forced to proceed through each of the tiers of the three-tier system. Moreover, a wholesaling license comes at a higher cost than a winery license, and with a different bundle of privileges – many of which a winery seeking only to sell its own products to retailers would not use. In short, this path is simply an "indirect way of subjecting out-of-state wineries . . . to the three-tier system," *Granholm*, 544 U.S. at 474, and the

---

[10] While upholding the provisions allowing in-state-wineries, but not out-of-state wineries, to sell directly to retailers, the District Court invalidated New Jersey's fee schedule for retail and wholesale licenses on the ground that wholesale licenses – the only type available to out-of-state wineries – are more expensive. In light of our conclusion that the relevant portions of the statute (§§ 33:1-10(2a) and (2b)) are not saved by the ability of out-of-state wineries to obtain wholesale licenses, we need not reach this issue.

34

provisions allowing in-state, but not out-of-state, wineries to sell directly to retailers without using a wholesaler are therefore discriminatory.

**(3)**

Neither defendant nor intervenors attempts to save the provisions of the ABC Law allowing in-state wineries to make direct sales to consumers and retailers by arguing that they are necessary to serve some legitimate local purpose. Accordingly, we hold that these portions of the ABC Law violate the dormant Commerce Clause.

**B.**

As discussed above, N.J. Stat. Ann. § 33:1-2(a) caps the importation of out-of-state wine for personal use at one gallon unless the importing individual secures a special permit. Absent such a permit, the statute also bans the importation of *any* alcoholic beverages from states that refuse to allow individuals to enter with alcohol from New Jersey. Plaintiffs again argue

35

that these provisions facially discriminate against interstate commerce.

**(1)**

No party contends that the one-gallon cap on the importation of out-of-state wine is facially non-discriminatory, and that provision does, in fact, treat in-state and out-of-state wine differently in a way that harms interstate commerce. Specifically, the requirements that any individual seeking to enter New Jersey with a greater amount of wine (1) apply for a special permit, and (2) pay a fee for the permit, directly burden interstate, but not intrastate, commerce. Moreover, since New Jersey wineries are currently able to sell unlimited quantities of wine to residents, this provision operates to limit the amount of out-of-state, but not in-state, wine that may circumvent the three-tier system. Accordingly, this provision is also subject to

36

strict scrutiny.[11]

Defendant nevertheless argues that the permit requirement serves local purposes that would not be as well served by non-discriminatory legislation. In particular, Fischer adopts the District Court's conclusion that "the . . . special permit serves as a registration mechanism, providing the state the authority to keep track of on-premises interstate sales for the purposes of taxation and, to a much lesser extent, to prohibit illegal activity." *Freeman v. Fischer*, 563 F. Supp. 2d 493, 504 (D.N.J. 2008). But the District Court, which apparently raised these issues *sua sponte*, cites to no evidence in the record for this proposition. Neither does Fischer, and our independent

---

[11] Our holding in this regard is not contrary to the Fourth Circuit's analysis in *Brooks v. Vassar*, 462 F.3d 341 (4th Cir. 2006). The Fourth Circuit did not address the *Brooks* plaintiffs' argument that Virginia's similar one-gallon importation limit was unconstitutional, instead holding that the issue was rendered moot by the Virginia legislature's decision to prevent in-state wineries from making direct sales to consumers. *See id.* at 349-50.

review of the record has not uncovered any evidence to support the notion that the permit serves local interests in tracking sales and squelching illegal activity. This absence of evidence is dispositive, because "[t]he burden is on the State to show that the discrimination is demonstrably justified," and we may "uph[o]ld state regulations that discriminate against interstate commerce *only* after finding, based on concrete record evidence, that a state's nondiscriminatory alternatives will prove unworkable." *Granholm*, 544 U.S. at 492-93 (emphases supplied and omitted and internal quotation marks omitted). The District Court's unsupported assertion does not "satisf[y] this exacting standard," *id.* at 493, and we accordingly hold that the permit requirement violates the dormant Commerce Clause.

**(2)**

The reciprocity provision of § 33:1-2(a) also facially discriminates against interstate commerce. As with the permit fee, the reciprocity requirement prevents certain wine – in this

case, wine from specified jurisdictions – from entering the state outside the strictures of the three-tier system, while local winemakers are free to sell as much wine as they can directly to New Jersey residents. Moreover, as the Supreme Court has noted, reciprocity provisions like New Jersey's "risk[] generating the trade rivalries and animosities, the alliances and exclusivity, that the Constitution and, in particular, the Commerce Clause were designed to avoid." *Granholm*, 544 U.S. at 473.

The District Court nonetheless held that the reciprocity provision is constitutional because defendant interprets it not to apply to wine imported for personal use. "When considering a facial challenge to a state law, 'a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered.'" *Brown v. City of Pittsburgh*, 586 F.3d 263, 274 (3d Cir. 2009) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S.

39

489, 494 n.5 (1982)). But we will only adopt a proffered limiting construction when the statute is actually "susceptible to a construction that avoids constitutional difficulties." *Brown*, 586 F.3d at 275. In this case, defendant's narrowing interpretation is contrary to the plain meaning of the statute. The statute provides in part that

> [a]lcoholic beverages intended in good faith solely for personal use may be transported, by the owner thereof . . . from a point outside this State to the extent of . . . one gallon of wine . . . within any consecutive period of 24 hours; provided, however, that except pursuant to and within the terms of a license or permit issued by the director, no person shall transport into this State or receive from without this State into this State, alcoholic beverages where the alcoholic beverages are transported or received from a state which prohibits the transportation into that state of alcoholic beverages purchased or otherwise obtained in the State of New Jersey.

N.J. Stat. § 33:1-2(a). The reciprocity provision is thus a prohibitory exception from the rule delineating the quantities of alcohol that may otherwise be imported for personal use. As a

result, the provision cannot be read to contain an exception allowing importation for personal use, because to imply that exception would read the reciprocity clause out of the statute entirely. We therefore reject defendant's limiting interpretation and subject the reciprocity provision to strict scrutiny.

As with the provisions regarding sales to consumers and retailers, no party has provided us with any argument that the reciprocity provision is necessary to effectuate some legitimate local interest. We thus hold it unconstitutional as violative of the dormant Commerce Clause.

## C.

Finally, plaintiffs seek to invalidate New Jersey's ban on direct shipments of wine from any winery, whether in-state or out-of-state, to consumers.[12] While plaintiffs concede that this

---

[12]    In their reply brief, plaintiffs argue that the ban only applies to out-of-state wineries, because N.J. Stat. § 33:1-28 provides that "[l]icensees . . . may transport alcoholic beverages in their own vehicles, solely, however, for their

41

ban is not facially discriminatory, they argue that it is discriminatory in effect. To prevail on this argument, plaintiffs must "show that the challenged state statute has extraterritorial

_____

own respective business in connection with and as defined in their respective licenses, without possessing a transportation license." New Jersey winery licenses, however, do not allow the licensees to transport wine to consumers. As discussed above, the plenary winery license permits sales to consumers only "on the licensed premises of the winery for consumption on or off the premises" and "in six salesrooms apart from the winery premises for consumption on or off the premises." *Id.* § 33:1-10(2a). The language of the farm winery provision is slightly different; it allows sales "at retail to consumers for consumption on or off the licensed premises" and "in six salesrooms apart from the winery premises for consumption on or off the premises." *Id.* § 33:1-10(2b). Plaintiffs argue that the first of these phrases allows the shipment of wine to consumers – essentially reading "on or off the premises" to apply to the location of the *sale*, not the location of the consumption. But that reading ignores the parallel use of "on or off the premises" to apply to consumption in both the plenary license provision and the salesroom portion of the farm winery license language. Moreover, if a farm winery could sell "at retail to consumers" anywhere, the separate language allowing sales at six salesrooms across the state would be surplusage. Accordingly, although the language of the farm and plenary winery license provisions differs slightly, we interpret the two types of licenses as providing identical privileges concerning direct sales to consumers.

42

effects that adversely affect economic production (and hence interstate commerce) in other states, thereby forcing 'producers or consumers in other States [to] surrender whatever competitive advantages they may possess.'" *Cloverland II*, 462 F.3d at 261 (quoting *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 580 (1986)).

In their attempt to meet this burden, plaintiffs note that some wineries sell their goods only by direct shipment. But the choice by certain producers to conduct sales only by direct shipment is irrelevant to the constitutionality of the ABC Law, because the Commerce Clause does not place New Jersey under an obligation to cater to the preferred marketing practices of out-of-state businesses. *See A.S. Goldmen & Co. v. N.J. Bureau of Secs.*, 163 F.3d 780, 787 (3d Cir. 1999) (holding that "questions of the market's 'structure' and its 'method of operation' are quite simply beyond the concern of the Commerce Clause") (quoting *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127-28

43

(1978)).

Plaintiffs also contend that the direct shipment ban disproportionately affects out-of-state wineries because those producers must funnel all of their wine through the three-tier system. But, assuming that this requirement disadvantages out-of-state producers, it is *not* an effect of the direct-shipment ban – which even-handedly forces all wine sales out of one channel and into other available channels – but by the features of the ABC Law invalidated above, which allow New Jersey wineries to circumvent the three-tier system. This argument therefore also fails to demonstrate that the direct shipment ban is discriminatory in effect.

Finally, plaintiffs contend that many consumers cannot, or will not, undertake to travel to distant locations to purchase wine. Even if true, this fact, standing alone, does not demonstrate that the direct shipment ban harms interstate commerce by privileging in-state producers at the expense of

44

out-of-state wineries. And while several types of evidence could show such an effect, plaintiffs have failed to present any competent evidence that the ban burdens interstate commerce. The Federal Trade Commission report on which they rely,[13] though critical of direct shipment bans, is silent as to the effects of New Jersey law. Plaintiffs also have not produced any other evidence that so much as "a single penny of losses" incurred by any out-of-state producer is "attributable to the allegedly discriminatory" ban. *Baldacci*, 505 F.3d at 37. Further, although the ban might be unconstitutional in its effects if it led to more New Jersey wines, and fewer out-of-state wines, being sold in New Jersey, the record reflects that less than 1% of wine sold in New Jersey is grown in New Jersey – a fact that gives rise to the inference that no displacement of out-of-state wines

---

[13] The Report, "Possible Anticompetitive Barriers to E-Commerce: Wine," is available at http://www.ftc.gov/os/2003/07/winereport2.pdf (last visited July 15, 2010).

45

has occurred. Plaintiffs have also failed to present evidence that (1) "consumers substitute wines purchased directly from [in-state] vineyards for wines that they otherwise would have purchased from out-of-state producers," or, in fact, that (2) anyone besides the Freemans purchases "any wines at all . . . directly from [in-state] vineyards." *Id*. at 36. Nor do "plaintiffs . . . adduce[ any] evidence that would in any way undermine the plausible impression that" New Jersey "consumers (like imbibers everywhere) view trips to a winery as a distinct experience incommensurate with – and therefore, unlikely to be replaced by – a trip to either a mailbox or a retail liquor store." *Id*. at 37. In short, the record contains no evidence that New Jersey's direct shipment ban harms interstate commerce in favor of intrastate commerce.

In fact, the gravamen of plaintiffs' argument is not that non-New Jersey wines are excluded from the market, but rather that a subset of those wines, which are produced by small

46

wineries that do not have much volume or perhaps capital, would only be able to enter the New Jersey market via direct shipping, which is prohibited. But, as with wineries that deliver exclusively by mail order, the fact that consumers cannot obtain a subset of out-of-state wines because of the otherwise-neutral structure of the market and the business plans of the wineries in question does not render New Jersey's direct-shipment ban constitutionally infirm. *See A.S. Goldmen & Co.*, 163 F.3d at 787. And because plaintiffs bear the burden on this issue, "the mere fact that a statutory regime has a discriminatory *potential* is not enough to trigger strict scrutiny." *Baldacci*, 505 F.3d at 37; *see also Ass'd Indus. of Mo. v. Lohman*, 511 U.S. 641, 654 (1994) (noting that the Supreme Court has "never deemed a hypothetical possibility of favoritism to constitute discrimination that transgresses constitutional commands"). We accordingly hold that plaintiffs have not met their burden of demonstrating that the direct shipment ban discriminates against interstate

47

commerce in violation of the dormant Commerce Clause.[14]

Because plaintiffs do not argue in the alternative that the direct shipping ban fails the balancing test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), we reject their challenge to the direct shipping ban and affirm the District Court's opinion insofar as it held that ban to be constitutional.

**IV.**

Having determined that the provisions of the ABC Law (1) allowing in-state wineries to sell directly to consumers and retailers, and (2) limiting the importation of out-of-state wine

---

[14]     We note that the Sixth Circuit, in *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423 (6th Cir. 2008), struck down, on an arguably similar record, a Kentucky statutory provision permitting individuals to receive direct shipments from small wineries if the consumer had ordered the wine while physically present at the winery. The *Lilly* court's holding, however, rested on the conclusion that "small Kentucky wineries benefit[ted] from less competition from out-of-state wineries" "[b]ecause of the economic and logistical barriers caused by the in-person requirement." *Id.* at 433. No such requirement is present in New Jersey law, and *Lilly* is therefore distinguishable.

48

intended for personal consumption into New Jersey violate the dormant Commerce Clause, we turn to the issue of the proper remedy. The invalid statutory provisions are constitutionally underinclusive, in that their provision of privileges to in-state wineries alone renders them invalid. This deficiency can be remedied in one of two ways – either by "declar[ing the offending provisions] a nullity and order[ing] that [their] benefits not extend to the class that the legislature intended to benefit, or [by] extend[ing] the coverage of the statute to include those who are aggrieved by the exclusion." *Heckler v. Matthews*, 465 U.S. 728, 738 (1984). In this case, neither the parties nor the District Court has expressly considered the choice between extension and nullification. For this reason, and because the choice between extension and nullification is "within the constitutional competence of a federal district court," *id.* at 739 n.5, we will remand to the District Court for a determination of the appropriate remedy. *See also, e.g., SEC v.*

49

*Graystone Nash, Inc.*, 25 F.3d 187, 194 (3d Cir. 1994) (suggesting remand "[w]hen significant factors" were not previously "weighed in" choosing a remedy).

## V.

For the foregoing reasons, we (1) affirm the District Court's determination that the Freemans have standing to sue, (2) vacate the District Court's invalidation of New Jersey's fee schedule for retail and wholesale licenses, (3) reverse the District Court's determination that the direct sales and importation provisions of New Jersey law comport with the dictates of the dormant Commerce Clause, (4) affirm the District Court's conclusion that New Jersey's ban on direct shipments of wine is constitutional, and (5) remand for a determination of the proper remedy.