RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0279p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC., A New York
Corporation,

         *Plaintiff-Appellant*,

      v.

COMMONWEALTH OF KENTUCKY, Kentucky
Department of the Treasury,

         *Defendant*,

TODD HOLLENBACH, Treasurer, in his official
capacity,

         *Defendant-Appellee*.

No. 12-6249

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 3:08-cv-00058—Danny C. Reeves, District Judge.

Argued: July 23, 2013

Decided and Filed: September 17, 2013

Before: SILER and COLE, Circuit Judges; DOWD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Walter L. Sales, STOLL KEENON OGDEN PLLC, Louisville, Kentucky, for Appellant. Brian T. Judy, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Walter L. Sales, Timothy J. Eifler, K. Timothy Kline, STOLL KEENON OGDEN PLLC, Louisville, Kentucky, Paul C. Harnice, Sarah Jackson Bishop, STOLL KEENON OGDEN PLLC, Frankfort, Kentucky, for Appellant. Brian T. Judy, Angela C. Evans, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

---

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

SILER, Circuit Judge.  Plaintiff American Express Travel Related Services Co., Inc. ("AmEx") appeals the grant of summary judgment in favor of defendant Todd Hollenbach, Treasurer of the Commonwealth of Kentucky, in this action challenging the retroactivity and constitutionality of an amendment to Kentucky Revised Statute (KRS) § 393.060(2), which shortened the presumptive abandonment period for traveler's checks ("TCs") from fifteen to seven years (the "Amendment").  For the reasons that follow, we **AFFIRM** the district court, and **REMAND** for entry of judgment in accordance with this decision.

**I.**

AmEx is the world's largest issuer of TCs, which are preprinted checks in fixed dollar amounts that are sold in every state of the United States and worldwide.  The business relies on the universal recognition and acceptance of TCs, which never expire.  AmEx and third-party vendors sell TCs at face value, and AmEx profits by investing the funds until the TC is redeemed.  Although most TCs are cashed within a year, AmEx uses the remaining uncashed TCs for long-term, high-yield investments.  Until recently, every state's abandoned property laws imposed a presumption of abandonment on uncashed TCs at fifteen years after issuance.  This presumption requires the issuer to transfer possession of the funds to the state.

The Kentucky General Assembly amended KRS § 393.060(2) in 2008 to change Kentucky's abandonment period from fifteen to seven years.[1]  AmEx subsequently filed suit against Hollenbach, claiming that the Amendment violates the Due Process Clause,

---

[1] The General Assembly had previously attempted to amend § 393.060(2) in the same manner in 2006, but a state court voided that bill for failing to comply with the Kentucky Constitution's procedures for amending a statute.  *Am. Express Travel Related Servs. Co., Inc. v. Kentucky*, No. 06-CI-1151 (Franklin Cir. Ct. Jan. 31, 2007).

the Contract Clause, and the Takings Clause of the United States Constitution.  Initially, the district court granted summary judgment for AmEx, finding that the Amendment violated the Due Process Clause because the legislative purpose of raising revenue did not satisfy rational basis review.  *Am. Express Travel Related Servs. Co. v. Hollenbach*, 630 F. Supp. 2d 757, 760-64 (E.D. Ky. 2009).  On appeal, we held that the Amendment, applied prospectively, did not violate the Due Process Clause and remanded the case to the district court to consider AmEx's remaining claims.  *Am. Express Travel Related Servs. Co., Inc. v. Kentucky*, 641 F.3d 685, 694-95 (6th Cir. 2011).

On remand, after AmEx amended its complaint to add a dormant Commerce Clause argument, the parties filed cross-motions for summary judgment.  In its motion for summary judgment, AmEx additionally argued that the legislation did not apply retroactively so as to affect TCs that were issued and outstanding prior to the effective date of the Amendment.  The district court denied AmEx's motion and granted Hollenbach's motion.  *Am. Express Travel Related Servs. Co., Inc. v. Hollenbach*, No. 3:08-58-DCR, 2012 WL 4023709, at *1 (E.D. Ky. Sept. 12, 2012).  AmEx now appeals.

**II.**

AmEx raises multiple issues on appeal.  In addition to disputing whether the Amendment has prospective or retroactive applicability under Kentucky law, it argues that the provision violates the Commerce Clause.  We do not reach AmEx's other constitutional arguments, which are based on retroactive application, because we find, for the reasons stated below, that the Amendment is substantive and applies only prospectively.  Finally, Hollenbach raises the issue of collateral estoppel based on litigation AmEx brought in New Jersey in 2010, after that state changed its presumptive abandonment period from fifteen to three years.

We review *de novo* a district court's grant of summary judgment based on whether a state statute violates the U.S. Constitution.  *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 431 (6th Cir. 2008).

## III.

As a threshold matter, we first review the claim of issue preclusion Hollenbach raised against AmEx. He argues that collateral estoppel prohibits AmEx from raising the same claims it unsuccessfully litigated against New Jersey in *American Express Travel Related Services, Inc. v. Sidamon-Eristoff*, 669 F.3d 359 (3d Cir. 2012). After New Jersey passed a statute changing the presumptive abandonment period from fifteen to three years, AmEx sought a preliminary injunction against the New Jersey Treasurer. It argued that the amendment violated the Due Process Clause, the Contract Clause, the Takings Clause, and the Commerce Clause of the federal Constitution. *Id.* at 366. The Third Circuit held that AmEx could not show a likelihood of success on the merits of its claims and affirmed the district court's order denying preliminary injunctive relief. *Id.* at 374.

Denials of preliminary relief are generally not given preclusive effect. *Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1205-06 (Fed. Cir. 2007). This is so because "the prior proceeding must have resulted in a final judgment on the merits" in order to be accorded preclusive effect. *Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 601 (6th Cir. 2012) (quoting *Kosinski v. Comm'r*, 541 F.3d 671, 675 (6th Cir. 2008)). Because the Third Circuit's holding was specifically based on the "likelihood of success on the merits," and because a different state's law played an integral part in most of AmEx's claims, which makes the precise issues raised here different, *Sidamon-Eristoff* cannot be given preclusive effect. *See Sidamon-Eristoff*, 669 F.3d at 366-68.

## IV.

AmEx argues that the amendment to KRS § 393.060(2) can only apply prospectively. The basis for AmEx's position is that the Amendment did not include an express declaration of retroactivity as required by KRS § 446.080(3), and the provision is substantive, rather than remedial. Conversely, Hollenbach argues the Amendment is remedial in nature and, therefore, should be interpreted as applying retroactively.

Kentucky law governing statutory construction states that "[n]o statute shall be construed to be retroactive, unless expressly so declared."  KRS § 446.080(3).  The Kentucky Supreme Court has noted that this rule should be "strictly construed." *Hamilton v. Desparado Fuels, Inc.*, 868 S.W.2d 95, 97 (Ky. 1993).  Moreover, the Kentucky Supreme Court has held that although substantive legislation is presumed to be prospective, remedial legislation does not fall within the general rule against retroactive application.  *Commonwealth Dep't of Agric. v. Vinson*, 30 S.W.3d 162, 168 (Ky. 2000); *Peabody Coal Co. v. Gossett*, 819 S.W.2d 33, 36 (Ky. 1991).  Kentucky courts have defined remedial legislation as providing "no more than the expansion of an existing remedy without affecting the substantive basis, prerequisites, or circumstances giving rise to the remedy." *Ky. Ins. Guar. Ass'n v. Jeffers ex rel. Jeffers*, 13 S.W.3d 606, 609 (Ky. 2000).  On the other hand, substantive legislation "change[s] and redefine[s] the out-of-court rights, obligations and duties of persons in their transactions with others." *Vinson*, 30 S.W.3d at 168.

The Amendment does not expressly declare that the change was meant to be applied retroactively.  Indeed, House Bill 704, which contained the Amendment, did not list an effective date and does not discuss retroactivity for § 12, the applicable section. 2008 Ky. Acts 132 § 12.  By contrast, House Bill 704 does note that §§ 8-11 are retroactive to all outstanding claims and that § 7 has an effective date of August 1, 2008. *Id.* at §§ 15-16.  This suggests that the legislature knew how to express retroactivity and effective dates, but chose not to when amending KRS § 393.060(2).  Moreover, when the General Assembly repealed and reenacted the Amendment in 2009,[2] it declined the opportunity to make the provision fully retroactive, instead declaring its intention that the provision be applied retroactively only to April 24, 2008, the original effective date of the 2008 Amendment.  2009 Ky. Acts 86 § 17.  If the legislature had meant for the

---

[2]The General Assembly repealed and reenacted the 2008 Amendment in 2009, due to questions concerning its validity.  Specifically, the Kentucky legislature failed to present the 2008 Amendment to the governor by midnight on the last day it was authorized to be in session.  A Kentucky state court held in early 2009 that presentment must occur before the end of the legislative session. *See Williams v. Grayson*, No. 08-Cl-856 (Franklin Cir. Ct. Jan. 21, 2009).  To remedy this potential problem, the General Assembly repealed and reenacted the identical "seven-year" change to § 393.060(2) in 2009. *See* 2009 Ky. Acts 86 §§ 11, 17.

provision to be fully retroactive to all outstanding TCs, it could have simply stated so, as it did in § 15 of the same bill regarding outstanding tax refund claims. 2009 Ky. Acts 86 § 15.

Because the General Assembly did not expressly declare the Amendment to be retroactive, the provision may only apply to TCs issued before the enactment date if it is remedial rather than substantive under Kentucky law. According to the standard in *Jeffers*, the Amendment is not remedial because it is not limited to improving an existing remedy. Instead, it affects the prerequisites and circumstances giving rise to the remedy. *See Jeffers*, 13 S.W.3d at 609-10. Specifically, it alters the amount of time required for the presumptive abandonment of TCs, from fifteen to seven years. Moreover, like the amendment in *Vinson*, the Amendment here has clearly "change[d] and redefine[d]" AmEx's "obligations and duties" in its TC transactions. *Vinson*, 30 S.W.3d at 168. Because the Amendment must be considered substantive, it is to be applied only prospectively from April 24, 2008.

The district court assumed that the Amendment was retroactive and then held it was not unconstitutional. However, because we have decided the retroactive issue, we need not address the constitutional issues related to that assumption, that is, whether the Amendment is a violation of substantive due process, the Contract Clause, or the Takings Clause. Thus, deciding the state law question first obviates the need to analyze the remaining constitutional issues, except for the dormant Commerce Clause discussed below.

## V.

We now turn to AmEx's sole remaining argument–the company's contention that the Amendment, even as applied prospectively, violates the dormant Commerce Clause. A challenge to a statute under the dormant Commerce Clause involves a two-part inquiry. First, we must "determine whether 'a state statute directly regulates or discriminates against interstate commerce, or [whether] its effect is to favor in-state economic interests over out-of-state interests.'" *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010) (quoting *Brown-Forman Distillers Corp. v. N.Y. State*

*Liquor Auth.*, 476 U.S. 573, 579 (1986)). If a statute does either of these, it is generally struck down without further inquiry. *Id.* "When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Brown-Forman Distillers*, 476 U.S. at 579 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). AmEx asserts that the Amendment violates the dormant Commerce Clause under both tests.

Under the first test, AmEx argues that the TC business is an interstate and international business that relies on the uniformity of regulation throughout the states, noting that only Kentucky and New Jersey have deviated from the fifteen-year presumptive abandonment period that has been adopted from the Uniform Unclaimed Property Act. It contends that the Amendment impairs the free flow of commerce and asserts that unless it chooses to sell TCs in Kentucky on a marginal basis or at a loss, the Amendment forces it to choose between three options: (1) to cease selling TCs in Kentucky; (2) to charge a fee for selling TCs in Kentucky, but not other places; or (3) to charge a fee for selling TCs throughout the United States to maintain uniformity. AmEx argues that this burdens interstate commerce by allowing Kentucky to dictate the operation of its TC business nationwide.

AmEx's argument fails because the Amendment does not practically or legally require it to choose any of the three options it mentions. Instead, AmEx may choose on its own volition to pursue one of its proposed options. This differs from the cases where the Supreme Court has held state statutes unconstitutional under the Commerce Clause. *See, e.g., Healy v. Beer Inst.*, 491 U.S. 324, 335-343 (1989) (finding a Connecticut statute unconstitutional because it controlled the prices at which out-of-state shippers could sell their beer in other states); *Brown-Forman*, 476 U.S. at 583-84 (finding a New York statute unconstitutional because it required distillers to seek approval of the New York State Liquor Authority before lowering prices in other states). The regulations in those cases had "the practical effect of controlling commerce that occur[red] entirely outside of the state in question." *Boggs*, 622 F.3d at 645. The Amendment here cannot

be said to *control* commerce outside of Kentucky, nor does it *require* AmEx to operate differently in Kentucky.

Under the second test, AmEx argues that the only real local benefit is to enrich the state at its expense, which may be illusory if it ceases to sell TCs in Kentucky or exits the TC industry in the United States altogether. However, while revenue generation is not a local benefit that can justify discrimination against interstate commerce, "it is a cognizable benefit for purposes of the *Pike* test." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 346 (2007). Further, as previously noted, while AmEx may voluntarily choose to cease selling TCs in Kentucky, or exit the TC market altogether, the Amendment does not directly or indirectly require it to do so. Thus, AmEx's Commerce Clause challenge fails.

## VI.

In sum, although we are affirming the district court, we do so on different grounds. We hold that the TC provision applies only prospectively from its enactment date of April 24, 2008, and does not violate the Commerce Clause. However, we recognize that the district court erroneously assumed that KRS § 393.060(2) applied retroactively, without so ruling. We therefore remand the case to the district court with instructions to enter a judgment finding that KRS § 393.060(2) applies only prospectively from April 24, 2008.

**AFFIRMED** in part and **REMANDED** in part.