# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 25, 2014

Lyle W. Cayce
Clerk

————

No. 13-50900

————

CHURCHILL DOWNS INCORPORATED; CHURCHILL DOWNS TECHNOLOGY INITIATIVES COMPANY, doing business as TwinSpires.Com,

Plaintiffs – Appellants

v.

CHUCK TROUT, In His Official Capacity as Executive Director of the Texas Racing Commission; GARY P. ABER, In His Official Capacity as a Member of the Texas Racing Commission; SUSAN COMBS, in Her Official Capacity as a Member of the Texas Racing Commission; RONALD F. EDERER, In His Official Capacity as a Member of the Texas Racing Commission; GLORIA HICKS, In Her Official Capacity as a Member of the Texas Racing Commission; MICHAEL F. MARTIN, In His Official Capacity as a Member of the Texas Racing Commission; ALLAN POLUNSKY, In His Official Capacity as a Member of the Texas Racing Commission; ROBERT SCHMIDT, In His Official Capacity as a Member of the Texas Racing Commission; JOHN T. STEEN, III, In His Official Capacity as a Member of the Texas Racing Commission; VICKI SMITH WEINBERG, In Her Official Capacity as a Member of the Texas Racing Commission,

Defendants – Appellees

————————

Appeal from the United States District Court
for the Western District of Texas
No. 1:12-CV-880

————————

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.

No. 13-50900

PER CURIAM:[*]

Churchill Downs Incorporated and Churchill Downs Technology Initiatives Company, doing business as TwinSpires.Com, ("Plaintiffs") sued the executive director and the board members of the Texas Racing Commission ("the Commission") alleging that certain provisions of the Texas Racing Act that require bets on horse races to be placed in-person[1] violate the dormant Commerce Clause of the United States Constitution. After briefing by the parties and a hearing, the district court found that the challenged provisions did not violate the dormant Commerce Clause and dismissed the case. For the reasons stated below, we affirm.

"A district court's judgment concerning a statute's constitutionality is reviewed de novo. To the extent relevant to the constitutional question, subsidiary facts are reviewed for clear error." *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007) (internal citations omitted).

Plaintiffs assert that the in-person betting requirements of the Texas Racing Act violate the dormant Commerce Clause.[2] In *Allstate Insurance Co. v. Abbott*, we explained the dormant Commerce Clause analysis:

> A statute violates the dormant Commerce Clause where it discriminates against interstate commerce either facially, by purpose, or by effect. If the statute impermissibly discriminates,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *See* TEX. REV. CIV. STAT. ANN. art. 179e, §§11.01, 11.011, 11.04, 11.05.

[2] On the other hand, the Commission makes the preliminary argument that the dormant Commerce Clause is completely inapplicable because, in the Interstate Horseracing Act, Congress expressly authorized the states to pass statutes that would otherwise violate the dormant Commerce Clause. Interstate Horseracing Act, Pub. L. No. 95-515, 92 Stat. 1811 (1978) (codified at 15 U.S.C. §§ 3001, *et seq.*). Because the challenged statutes do not violate the dormant Commerce Clause in the first instance, we need not determine the effect of the Interstate Horseracing Act in this case.

2

then it is valid only if the state "can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." If the statute does not discriminate, then the statute is valid unless the burden imposed on interstate commerce is "clearly excessive" in relation to the putative local benefits.

*Id.* at 160 (internal citations omitted).

Moreover, "discrimination does not include all instances in which a state law burdens some out-of-state interest while benefitting some in-state interest. Rather, a state statute impermissibly discriminates only when a [s]tate discriminates among similarly situated in-state and out-of-state interests." *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 725 (5th Cir. 2004) (internal quotation marks and citations omitted) (alteration in original). Courts evaluate whether a statute discriminates between "substantially similar entities." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997).

The Commission does not argue that the in-person betting requirements would survive strict scrutiny. On the other hand, Plaintiffs have repeatedly disclaimed any intention to make a *Pike* argument. Therefore, if we conclude this is a "discriminatory effects" case, Plaintiffs will prevail, but if we determine that this is an "incidental burdens" case, the Commission will prevail. This abbreviated analysis is a direct result of the parties' "all-or-nothing" litigation strategies.

We note that the jurisprudence in the area of the dormant Commerce Clause is, quite simply, a mess. It has failed to produce a readily discernable standard for distinguishing between statutes that have discriminatory effects and those that merely create incidental burdens. The Supreme Court has

acknowledged the muddled state of its dormant Commerce Clause jurisprudence[3] as has the academy.[4]

Plaintiffs argue that the in-person requirement is discriminatory in its effect.[5] In making this argument Plaintiffs place great weight on *Cherry Hill Vineyards, LLC, v. Lilly*, 553 F.3d 423 (6th Cir. 2008). In *Lilly*, the Sixth Circuit considered the constitutionality of Kentucky's law that allowed both in-state and out-of-state wineries to ship directly two cases of wine to Kentucky customers, but only if the wine was purchased in-person at the winery. *Id*. at 427-28. After considering the evidence of discrimination presented by the plaintiffs, the Sixth Circuit determined:

> Kentucky's in-person requirement makes it economically and logistically infeasible for most consumers to purchase wine from out-of-state small farm wineries. It is impractical for customers to travel hundreds or thousands of miles to purchase wine in-person, and out-of-state wineries are clearly burdened by Kentucky's regulatory scheme.
>
> . . . .
>
> Because of the economic and logistical barriers caused by the in-person requirement, small Kentucky wineries benefit from less competition from out-of-state wineries, especially from wineries in states such as Oregon, which are located a great distance from

---

[3] *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 n.12 (1997).

[4] *See* ERWIN CHEMERINSKY, CONSTITUTIONAL LAW 444-45 (4th ed. 2011) (internal citations omitted) ("The Court has on many occasions found facially neutral state and local laws to be discriminatory based on their purpose and/or effect. Unfortunately, the Court has never articulated clear criteria for deciding when proof of a discriminatory purpose and/or effect is sufficient for a state or local law to be deemed discriminatory. Indeed, the cases in this area seem quite inconsistent.").

[5] In the district court, Plaintiffs made a discriminatory purpose argument. On appeal it unclear whether Plaintiffs are making a discriminatory purpose argument that is independent of their discriminatory effect argument. To the extent that Plaintiffs are arguing that the in-person betting requirement was motivated by a discriminatory purpose, we agree with the district court that Plaintiffs have failed to produce sufficient evidence of a discriminatory purpose.

No. 13-50900

Kentucky and whose wine may be deemed distinct or preferable by consumers.

. . . .

Accordingly, this Court concludes that Plaintiffs have demonstrated that the challenged statutes discriminate against interstate commerce in practical effect.

*Id.* at 433.

*Lilly* appears to support Plaintiffs' position that Texas's in-person betting requirement has a discriminatory effect, but *Lilly* represents the zenith for the argument that courts should take a broad view of discriminatory effects. More importantly, the Supreme Court has yet to endorse the broad view of discriminatory effects that the Sixth Circuit employed in *Lilly*.

For Supreme Court authority, Plaintiffs rely on *Granholm v. Heald*, 544 U.S. 460 (2005). In *Granholm*, the Supreme Court struck down state laws that allowed in-state wineries to ship wine directly to their customers, but either completely banned out-of-state wineries from doing so or placed additional requirements on those out-of-state wineries. *Id.* at 473-74, 493. Although *Granholm* addressed discriminatory effects, *id.* at 474, it did so in the context of statutes that explicitly differentiated in-state and out-of-state wineries. The statutes in *Granholm* are distinguishable from the facially neutral statutes Plaintiffs are challenging in this case, and *Granholm* does not control this case.

In cases where the challenged statutes are facially neutral, the Supreme Court has evinced a reluctance to take an expansive view of the concept of "discriminatory effects." In *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 119-20 (1978), the Supreme Court considered a challenge to a statute that provided: "a producer or refiner of petroleum products (1) may not operate any retail service station within the State, and (2) must extend all 'voluntary allowances' uniformly to all service stations it supplies." In upholding the statute, the Supreme Court stated:

5

No. 13-50900

Plainly, the Maryland statute does not discriminate against interstate goods, nor does it favor local producers and refiners. Since Maryland's entire gasoline supply flows in interstate commerce and since there are no local producers or refiners, such claims of disparate treatment between interstate and local commerce would be meritless. Appellants, however, focus on the retail market arguing that the effect of the statute is to protect in-state independent dealers from out-of-state competition. They contend that the divestiture provisions "create a protected enclave for Maryland independent dealers . . . ." As support for this proposition, they rely on the fact that the burden of the divestiture requirements falls solely on interstate companies. But this fact does not lead, either logically or as a practical matter, to a conclusion that the State is discriminating against interstate commerce at the retail level.

As the record shows, there are several major interstate marketers of petroleum that own and operate their own retail gasoline stations. These interstate dealers, who compete directly with the Maryland independent dealers, are not affected by the Act because they do not refine or produce gasoline. In fact, the Act creates no barriers whatsoever against interstate independent dealers; it does not prohibit the flow of interstate goods, place added costs upon them, or distinguish between in-state and out-of-state companies in the retail market. The absence of any of these factors fully distinguishes this case from those in which a State has been found to have discriminated against interstate commerce.

*Id.* at 125-26 (internal citations omitted). The majority in *Exxon* reached its decision in part by narrowly defining substantially-similar entities. But in his dissent, Justice Blackmun took a very different view of the evidence and made a strong argument that the challenged statute actually discriminated between substantially-similar in-state and out-of-state entities. *Id.* at 137-145 (Blackmun, J., dissenting). Thus, *Exxon* illustrates the Court's reluctance to find that a facially neutral statute has discriminatory effects.[6]

---

[6] *See* CHEMERINSKY, *supra* note 4, at 446-47 (highlighting Justice Blackmun's dissent in observing that *Exxon* is a case where a facially neutral statute was upheld despite its "discriminatory impact").

No. 13-50900

Similarly, in *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 458 (1981), the Supreme Court upheld a facially neutral statute that prohibited retail distribution of milk in certain disposable plastic containers. The main alternatives to disposable plastic containers were disposable paper containers. *Id.* at 468-70. The Supreme Court applied *Pike* balancing and concluded: "Even granting that the out-of-state plastics industry is burdened relatively more heavily than the Minnesota pulpwood industry, we find that this burden is not 'clearly excessive' in light of the substantial state interest in promoting conservation of energy and other natural resources and easing solid waste disposal problems." *Id.* at 473. Again, the Supreme Court refused to find that a facially neutral statute had a discriminatory effect.[7]

Turning to the in-person betting requirements, we acknowledge that the requirements *may* result in Texas bettors' placing more bets at Texas tracks than at tracks in distant states. But plaintiffs have the burden of showing discriminatory effects, not merely illustrating that discriminatory effects could plausibly exist. See *Hughes v. Okla.*, 441 U.S. 322, 336 (1979) ("The burden to show discrimination rests on the party challenging the validity of the statute . . . ."). Contrastingly, the district court found that the record was "devoid of any evidence" that "the in-person requirement disproportionately affects out-of-state companies." Our review of the controlling authorities leads us to conclude that Plaintiffs' assertion without concrete record evidence alleges "effects on interstate commerce [that] are only incidental" and the in-person requirements "regulate[] even-handedly." *Pike*, 397 U.S. at 142. We are unpersuaded on this record that in-person betting requirements create "discriminatory effects" which would trigger strict scrutiny analysis.

---

[7] *See* CHEMERINSKY, *supra* note 4, at 447 (citing *Clover Leaf* as an additional example of a case where a "discriminatory impact" did not invalidate a facially neutral statute).

No. 13-50900

Because this is an incidental-burden case, the relevant analytical rubric for evaluating the challenged in-person betting requirements is the balancing test set forth in *Pike*. As we explained above, we need not conduct a *Pike*-balancing analysis because Plaintiffs have expressly stated that they are not asserting a *Pike* challenge. In light of Plaintiffs' failure to advance an argument under the applicable authority, we affirm the district court's judgment in favor of the Commission.

AFFIRMED.